In the

# United States Court of Appeals
## For the Seventh Circuit

───────────

No. 06-4370

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FELIPE PADILLA,

*Defendant-Appellant.*

───────────

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 784—**Samuel Der-Yeghiayan**, *Judge.*

───────────

ARGUED OCTOBER 29, 2007—DECIDED MARCH 31, 2008

───────────

Before BAUER, RIPPLE, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Felipe Padilla pleaded guilty to one count of knowingly distributing 121.3 grams of a substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1). After finding that the substance in question was cocaine base in the form of crack, the district court sentenced Padilla to 327 months' imprisonment, a sentence above the advisory guidelines sentence of 240 months. Padilla now appeals his sentence, arguing that (1) the district court improperly found the narcotics to be crack;

and (2) his sentence was unreasonable. We affirm the district court's finding on the drug type, but vacate and remand for resentencing in light of the recent Supreme Court decision in *Kimbrough v. United States*, 552 U.S. ___, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007).

## I. Background

In the fall of 2002, Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent David Gomez was on assignment monitoring weapons and drug transactions among Chicago gangs. On September 26, 2002, acting in an undercover capacity, he participated in a drug deal with Padilla, a cooperating individual ("CI"), and Adalberto Santiago in the parking lot of a K-Mart on Chicago's west side. Santiago and Padilla were charged with conspiracy to possess with intent to distribute cocaine base in the form of crack cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (Count I), and knowingly distributing approximately 121.3 grams of mixtures containing cocaine base in the form of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count II).

On April 18, 2005, Padilla filed a motion asking for an evidentiary hearing to determine the nature of the controlled substance. The district court denied the motion, finding that such a hearing was unnecessary in light of the fact that the "[i]ndictment in this case clearly inform[ed Padilla] that the controlled substance that [he was] charged with involves 'approximately 121.3 grams of mixtures containing cocaine base in the form of "crack," a Schedule II Narcotic Drug Controlled Substance.' " The court gave Padilla until June 1, 2005 to file an additional motion seeking the appointment of an independent expert to test

the drugs. Padilla filed no such motion. On January 4, 2006, the government informed Padilla that the Cook County Sheriff's Police Department Laboratory had inadvertently destroyed the narcotics related to Padilla's case.

Padilla pleaded guilty in a blind plea to Count II of the indictment on March 29, 2006. At the change of plea hearing, Padilla admitted that he distributed 121.3 grams of cocaine, but specifically did not admit that the substance was cocaine base in the form of crack cocaine. At the sentencing hearing on December 7, 2006, the government introduced evidence through Agent Gomez concerning the drug transaction on September 26, 2002. The district court, finding that the drugs were cocaine base in the form of crack, and that an upward departure from the sentencing guidelines range was warranted, sentenced Padilla to 327 months' imprisonment and ten years' supervised release.

## II. Discussion

On appeal, Padilla argues that (1) the government failed to establish by a preponderance of the evidence that the controlled substance was crack cocaine for sentencing purposes; and (2) based on the advisory guideline range, a sentence of 327 months was unreasonable. We address each issue in turn.

### A. The District Court's Drug Type Finding

Padilla challenges whether the government met its burden of proof that the substance involved in the deal was cocaine base in the form of crack for sentencing purposes. At sentencing after a guilty plea, the government has the burden of proving drug type by a preponderance of the

evidence. *United States v. Johnson*, 200 F.3d 529, 537 (7th Cir. 2000). We review the district court's finding of drug type for clear error, and will reverse only if we are left with the definite and firm conviction that a mistake was made. *See United States v. Wilson*, 437 F.3d 616, 621 (7th Cir. 2006).

As we have held, "[a]ll crack is cocaine base but not all cocaine base is crack." *United States v. Edwards*, 397 F.3d 570, 571 (7th Cir. 2005). The term "cocaine base," for purposes of 21 U.S.C. § 841(b), borrows from the definition contained in U.S.S.G. § 2D1.1, which defines "cocaine base" as "crack." U.S.S.G. § 2D1.1(c), Note D; *see United States v. Morris*, 498 F.3d 634, 644 (7th Cir. 2007) (citing *Edwards*, 397 F.3d at 573-76). As we noted in *Morris*, "[t]his definition distinguishes between both powder cocaine (cocaine hydrochloride) and cocaine bases and also between crack cocaine and other forms of cocaine base." 498 F.3d at 644. Therefore, for purposes of sentencing under § 841(b), the evidence must show that the substance at issue is crack, and not just cocaine base. *Edwards*, 397 F.3d at 576-77. Sentencing judges have wide latitude in the types of evidence they may consider in making factual determinations affecting a sentence. *See United States v. Hankton*, 432 F.3d 779, 790 (7th Cir. 2005). At Padilla's sentencing hearing, the government relied primarily on the testimony of Agent Gomez, a six-year veteran of ATF with five years specializing in narcotics trafficking, in its effort to prove the drug type. Agent Gomez testified to the following: on September 20, 2002, during a conversation with Padilla regarding a proposed drug transaction, Padilla offered to sell Agent Gomez crack cocaine. On September 26, 2002, Agent Gomez met the CI, Padilla, and Padilla's child in a K-Mart parking lot with the intention of purchasing drugs from Padilla and Santiago. While waiting for Santiago to

arrive with the drugs, Agent Gomez asked Padilla how much longer it would be for the drugs to arrive. Padilla responded that the drugs were "in the cooking process, it was drying at the time. . . . That was the reason for the wait." Agent Gomez, who had made approximately twenty undercover crack cocaine purchases, understood the term "drying" to mean the final process of cooking crack cocaine.

Santiago eventually arrived with the drugs in a bag, and gave them to the CI, who smelled the drugs and gave them to Agent Gomez. Agent Gomez noted that the drugs had a "very, very strong, pungent smell," consistent with the smell of crack cocaine. When the CI asked about the quality of the drugs, Padilla responded that the drugs were "fresh, cooked right off the lamb" and that "the stuff that he had just handed was good and that it was cooked up. It was cooked."

After Agent Gomez left the parking lot with the CI, he asked the CI about the quality of the drugs they had just purchased. The CI replied that "there's four and a half here, these things—these things cook so small, man, you could take an ounce and they'll shrink about that big, this stuff was cooked in a brick, all together in one brick." Agent Gomez understood this statement to mean that "the crack cocaine in this form, a hard substance, rock-like substance will crumble into smaller rocks and the four and a half ounces being purchased was more than likely cooked off the—cooked into a whole kilo and taken that portion out of it." Ultimately, Agent Gomez testified that based on his training and experience, his participation in the drug deal, and the statements made by the CI and Padilla, the substance he obtained from Padilla was cocaine base in the form of crack cocaine.

On cross-examination of Agent Gomez, Padilla introduced a written statement prepared by the CI that appeared to contradict the CI's statements to Agent Gomez. The CI said in the statement that upon opening the package containing the narcotics, he observed "four and a half ounces of cooked rock, a white substance powder." Padilla argued that the drugs could not be both "crack" and "powder." The CI did not testify at the sentencing hearing. On redirect, the government pointed out that at another portion of the same statement, the CI said that Santiago "will be at this location to drop off the cocaine of rock."

The government introduced two laboratory reports on the chemical analysis of the drugs. The first analysis tested positive for the presence of cocaine, and the second analysis reflected the presence of cocaine base. Neither lab report tested for the presence of sodium bicarbonate, an ingredient commonly used in preparing crack.

The district court concluded that the drugs in question were indeed crack: "On the issue of crack cocaine, based on the testimony of [Agent Gomez]'s observations, what he saw and heard, and the second lab report, I conclude that there is sufficient reliable evidence for a reasonable jury to conclude that the controlled substance was crack cocaine base."

On appeal, Padilla argues that the analysis of the drugs performed prior to their destruction must be disregarded because neither tested for the presence of sodium bicarbonate. While crack is *usually* prepared by processing cocaine hydrochloride and sodium bicarbonate, *Edwards*, 397 F.3d at 572, we have never mandated that a substance *must* contain sodium bicarbonate in order to be crack. *United States v. Lake*, 500 F.3d 629, 634 (7th Cir. 2007). The second laboratory report was only one of the pieces of evidence the district court considered in reaching his conclusion.

We have held that the government can prove a substance is crack by offering testimony from people familiar with the drug, *United States v. Anderson*, 450 F.3d 294, 301 (7th Cir. 2006), including veteran police officers and forensic chemists, *United States v. Linton*, 235 F.3d 328, 329-30 (7th Cir. 2000), as well as an informant's belief that he was purchasing crack, *United States v. Booker*, 260 F.3d 820, 824 (7th Cir. 2001). *See also United States v. Buchanan*, 362 F.3d 411, 413 (7th Cir. 2004); *United States v. Branch*, 195 F.3d 928, 933-35 (7th Cir. 1999). Though this is a close case, we find no reversible error in the district court's determination that Padilla possessed crack. The combination of the observations of the veteran narcotics officer, the statements by Padilla regarding the proposed sale of crack and the "cooking" and "drying" of the drugs, and the second laboratory report is minimally sufficient to satisfy the government's burden of proof and permit a district court to conclude that the substance was crack. Though the CI's statement in his written report describing the narcotics as "cooked rock, a white substance powder" certainly muddies the water, the entirety of the evidence tips the scale in favor of the district court's ultimate conclusion.

Padilla suggests that the government failed to meet its burden because the destruction of the narcotics precluded the introduction of the drugs at the hearing. We note that the destruction of the drugs was indeed regrettable. To an extent, however, Padilla's protestations ring a bit hollow, as he had the opportunity to file a motion for an independent expert to examine the drugs—prior to the discovery of their destruction—and chose not do so. More to the point, the government need not present the substance in the courtroom during the sentencing hearing in order to meet its burden that the substance is crack. *See Lake*, 500 F.3d at

634 (citing *Buchanan*, 362 F.3d at 413; *Linton*, 235 F.3d at 329-30).

Our deferential standard of review in this matter compels our conclusion that there was no clear error. We note, however, that the evidence distinguishing crack cocaine from other forms of cocaine base in this case was undeniably thin. Though the government asked Agent Gomez if he could distinguish between crack and powder cocaine, it did not ask him to distinguish between crack and other types of cocaine base. We reiterate that in cases such as this the government must produce evidence to show that the substance was specifically crack, and not just any form of cocaine base. *See Morris*, 498 F.3d at 644; *Edwards*, 397 F.3d at 576-77. Given the disparity between crack and other cocaine bases, and in the wake of *Kimbrough* and the amended crack Sentencing Guidelines (discussed more fully below), it is all the more critical that the government meet its burden of proving the drugs to be crack cocaine as distinct from other forms of cocaine base.

### B. Reasonableness of Sentence

Padilla next argues that his sentence was unreasonable because (1) the court made several procedural errors in making an upward departure from the properly calculated guideline range of 151-188 months' imprisonment and (2) his sentence of 327 months' imprisonment was greater than necessary to satisfy the factors enumerated in 18 U.S.C. § 3553(a). After *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we generally review a sentence for reasonableness in light of the statutory sentencing factors in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. ___, 128 S.Ct. 586, 597, 169 L.Ed.2d 445

(2007); *United States v. Hollins*, 498 F.3d 622, 629 (7th Cir. 2007). Because we remand in light of *Kimbrough*, we do not reach all of the issues raised by Padilla regarding the reasonableness of his sentence.

At Padilla's sentencing hearing, the district court adopted the findings in the presentencing investigation report ("PSR"). The PSR calculated Padilla's total offense level at twenty-nine, based in part on the conclusion that the drugs were crack cocaine. The PSR identified ten prior felony convictions—including several involving the use of a weapon and three occurring while incarcerated—that added up to twenty-nine criminal history points, placing Padilla in criminal history category VI. Based on this offense level and criminal history category, the PSR made an advisory guideline calculation range of 151 to 188 months' imprisonment. However, because of Padilla's prior convictions and the quantity of the cocaine base, the statutory mandatory minimum sentence was 240 months' imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). The Guidelines provide that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." *See* U.S.S.G. § 5G1.1(b). Therefore, as calculated in the PSR, Padilla's advisory guidelines sentence was 240 months' imprisonment.

At sentencing, the government argued in favor of an upward departure from advisory guidelines sentence of 240 months, asking that the court consider U.S.S.G. § 4A1.3(a)(4)(B), which discusses upward departure when the criminal history category fails to adequately reflect the

nature of the defendant's criminal past.[1] The government noted that the defendant's twenty-nine criminal history points were significantly more than the thirteen required to qualify for category VI. Because the criminal history category underrepresented his criminal background, the government argued, an upward departure of six offense levels—from twenty-nine (151-188 months) to thirty-five (292-362 months)—was warranted. Counsel for Padilla argued that Padilla's criminal history was already considered in the guidelines calculation, and that the government cited no authority for the suggestion that the guidelines advised a potential doubling of his sentence. He also presented mitigating factors, including Padilla's remorse for his conduct and his efforts to obtain an education.

The district court agreed with the PSR's calculation that the advisory guidelines sentence was 240 months' imprisonment. In considering an above-guidelines sentence, the district court first noted Padilla's lengthy criminal history, including nineteen prior arrests and eleven criminal convictions, and agreed with the government that the twenty-nine criminal history points were well above that required for category VI. The court then explained his

---

[1]     The full text of U.S.S.G. § 4A1.3(a)(4)(B) states:

Upward Departures from Category VI.—In a case in which the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

reasons for giving Padilla a sentence above the calculated guidelines range:

> Drugs tear at the very fabric of our society, split apart families and cost people their lives. Defendant's actions have contributed to the ongoing drug problem in the country. The sentence I am imposing upon the defendant is a just punishment for the offense and sufficiently severe to promote respect for the law and to serve as a deterrence to the defendant and to others who contemplate engaging in similar criminal conduct. The public will be protected by this sentence as the defendant will be incarcerated and given an opportunity to rethink his way of life during that incarceration and defendant has indicated that he will change his way of life.

The court concluded: "I find that an upward departure as argued by the government under advisory sentencing guideline 4A1.3 is appropriate based on the inadequacy of the defendant's criminal history score due to both the number and nature of his prior offenses." The court then sentenced Padilla to 327 months' imprisonment.

In reviewing Padilla's sentence, we reserve all but one issue pending the remand discussed below: the calculation of the guidelines range. In sentencing a defendant, a district court begins by calculating the correct applicable guidelines range. *Gall*, 128 S.Ct. at 596 (citing *Rita v. United States*, 551 U.S. ___, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)); *United States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007). Padilla argues that the properly calculated range was 151-188 months, and not 240 months, as the district court concluded. We disagree. The range of 151-188 months was correct for Padilla's criminal history category and offense level, but U.S.S.G. § 5G1.1(b) instructs the district court to

make the statutory minimum sentence the guidelines sentence when it exceeds the guidelines range. *See* U.S.S.G. § 5G1.1 cmt.; *United States v. Santiago*, 495 F.3d 820, 822-23, 825 (7th Cir. 2007); *United States v. Nelson*, 491 F.3d 344, 349 (7th Cir. 2007); *see also United States v. Duncan*, 413 F.3d 680, 683 (7th Cir. 2005) (noting that even after *Booker*, district courts remain bound by applicable statutory minimums). As the district court properly calculated, the statutory minimum sentence under § 841(b)(1)(A) of 240 months' imprisonment was the guideline sentence.

Our review of the reasonableness of Padilla's sentence, for the time being, ends here. The district court imposed Padilla's sentence prior to the Supreme Court's ruling in *Kimbrough*, which addressed the 100:1 sentencing disparity between offenses involving crack and powder cocaine. In *Kimbrough*, the Supreme Court held that district courts are free to consider, as part of their analysis of the § 3553(a) factors, the disparity in the guidelines ranges for offenses involving crack cocaine compared to those for powder cocaine. 128 S.Ct. at 575. The Court stated that the guidelines for crack offenses are advisory only, and therefore "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." *Id*. at 574-75.[2]

---

[2] Prior to *Kimbrough*, the United States Sentencing Commission criticized the 100:1 sentencing disparity, and subsequently reduced the base offense level in the guideline ranges for crack offenses by two levels for those sentenced on or after November 1, 2007. *See* U.S. SENTENCING COMM'N REPORT TO THE CONGRESS:

(continued...)

Several of our sister circuits have addressed the impact of *Kimbrough*. *See, e.g.*, *United States v. Wise*, ___ F.3d ___, 2008 WL 361089, at *9-10 (3d Cir. Feb. 12, 2008) (affirming sentence where district court clearly indicated that it understood the full scope of its discretion to consider the crack/powder disparity in imposing sentence); *United States v. Medina Casteneda*, 511 F.3d 1246, 1248-49 (9th Cir. 2008) (remanding for resentencing in light of *Kimbrough* where the district court stated that it could not consider the crack/powder cocaine disparity as part of its consideration of the § 3553(a) factors); *United States v. Dawson*, 2008 WL 194914, at *5 (11th Cir. Jan. 24, 2008) (same).

---

[2] (...continued)
COCAINE AND FEDERAL SENTENCING POLICY 8 (May 2007), available at http://www.ussc.gov/r_congress/cocaine2007.pdf; Amendments to the Sentencing Guidelines for the United States Courts, 72 Fed.Reg. 28571-28572 (2007). On December 11, 2007, the Commission voted to give retroactive effect as of March 3, 2008 to the amendment to the crack guideline. *See* U.S.S.C. Press Release, U.S. Sentencing Commission Votes Unanimously to Apply Amendment Retroactively for Crack Cocaine Offenses (Dec. 11, 2007), available at http://www.ussc.gov/PRESS/rel121107.htm. Reducing the crack/ powder disparity does not directly help Padilla, however. Though the crack guideline change applies retroactively, it would not affect Padilla's sentencing guideline range, which was determined by statute under 21 U.S.C. § 841(b)(1)(A) and U.S.S.G. § 5G1.1(b). But *Kimbrough* could potentially affect the reasonableness of Padilla's above-guidelines sentence (e.g., if the district court thought that he could not consider the 100:1 disparity when choosing to add eighty-seven months to Padilla's guideline sentence).

Our challenge in this case is to determine *Kimbrough*'s effect on Padilla's appeal. Padilla did not specifically ask the district court to consider the 100:1 disparity when determining his sentence for an offense involving crack. Nor would he have stood on sound legal footing in so doing prior to *Kimbrough*. *See United States v. Miller*, 450 F.3d 270, 273-276 (7th Cir. 2006), *abrogated by Kimbrough*, 128 S.Ct. at 574-75. However, Padilla did contest before the district court and again on appeal whether the drugs in question were crack. We can presume that Padilla's primary purpose in disputing the drug type was to avoid the harsh effects of the crack sentencing disparity, since no other logical inference exists. In so doing, Padilla preserved the issue, however obliquely, of whether the district court could consider the 100:1 sentencing disparity in sentencing.

The district court did not address his agreement or disagreement with the 100:1 ratio, making no comments about whether he thought he could consider the disparity in rendering a sentence. But we need not infer from his silence that the district court agreed with the 100:1 ratio. On the record before us, we have no way of knowing if the district court would have imposed the same above-guidelines sentence had the court known that he had discretion to consider that disparity when deciding upon a sentence under § 3553(a). This is not a case where the district court stated that he would have imposed the same sentence even if there were no guidelines, which would have made clear that the crack/powder disparity did not affect the sentencing decision. *Cf. United States v. White*, ___ F.3d ___, 2008 WL 585036, at *6 (7th Cir. Mar. 5, 2008). Nor is this a case where the crack/powder disparity issue was not adequately preserved at the district court level, limiting our review to plain error. *Cf. United States v.*

*Taylor*, \_\_\_ F.3d \_\_\_, 2008 WL 782739 (7th Cir. March 26, 2008). Because we cannot ascertain with any exacting degree of certainty whether the sentencing judge would have imposed the same term of incarceration in the wake of *Kimbrough*, and because we find that the issue was adequately preserved, a remand is appropriate.[3]

We express no opinion as to the reasonableness of Padilla's sentence. However, we encourage the district court to keep in mind our mandate, recently reiterated by the Supreme Court in *Gall*, that a district court take into consideration the factors set forth in 18 U.S.C. § 3553(a) and provide an adequate explanation for the sentence given. After calculating the Guidelines range, a district court must give both parties an opportunity to argue for whatever sentence they deem appropriate, and then consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by a party. *Gall*, 128 S.Ct. at 596; *United States v. Dale*, 498 F.3d 604, 611-12 (7th Cir. 2007). If a district court "decides that an outside-Guidelines sentence is warranted, [it] must con-

---

[3]   In remanding for resentencing, we note the Supreme Court's recent remand of a case similar to Padilla's. *See Rios v. United States*, 128 S.Ct. 876 (2008) (vacating judgment in *United States v. Rios*, 224 Fed.Appx. 529 (7th Cir. 2007) and remanding for further consideration in light of *Kimbrough*). In *Rios*, counsel for the defendant filed a no-merit brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and we granted the motion to withdraw and dismissed the appeal. As in this case, Rios did not explicitly raise the 100:1 sentencing disparity, but did dispute that the drugs at issue were crack. The Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of *Kimbrough*. *Rios*, 128 S.Ct. 876.

sider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Gall*, 128 S.Ct. at 597; *United States v. McIlrath*, 512 F.3d 421, 426 (7th Cir. 2008). The further a sentence varies from the advisory guidelines range, the more detailed the district court's explanation must be. *Gall*, 128 S.Ct. at 597 ("[A] major departure should be supported by a more significant justification than a minor one."); *United States v. Wachowiak*, 496 F.3d 744, 749-50 (7th Cir. 2007). In this case, the district court's explanation for the above-guidelines sentence, as well as the analysis of the § 3553(a) sentencing factors, was slim at best. We recommend a more thorough inquiry on remand.

### III. Conclusion

For the foregoing reasons, the judgment of the district court regarding the drug type finding is AFFIRMED, and we VACATE Padilla's sentence and REMAND for resentencing.