NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 8, 2008
Decided June 4, 2008

**Before**

JOHN L. COFFEY, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

Nos. 07-2875 & 07-3017

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeals from the United States |
| *Plaintiff-Appellee,* | District Court for the |
| | Western District of Wisconsin. |
| *v.* | |
| | No. 07 CR 24 |
| KENNETH R. GREEN and | |
| NEKEYA L. PATTON, | Barbara B. Crabb, |
| *Defendants-Appellants.* | *Chief Judge.* |

### O R D E R

Kenneth Green and Nekeya Patton, partners in love and drug dealing, were arrested moments before a controlled buy of crack cocaine. Both pleaded guilty to possessing crack with intent to distribute, and both were sentenced under our pre-*Kimbrough* precedent, which prohibited a district court from giving effect to a policy disagreement with the different treatment under the guidelines for like amounts of powder cocaine and crack. *See, e.g. United States v. Miller*, 450 F.3d 270, 275-76 (7th Cir. 2006), *abrogated by Kimbrough v. United States*, 128 S. Ct. 558, 574-75 (2007). Patton filed a notice of appeal, but her appointed

lawyer moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967). We deny that motion because counsel has failed to discuss the nonfrivolous argument that Patton can raise after *Kimbrough*. Green also filed an appeal, and his lawyer has also omitted reference to *Kimbrough*. But counsel did vaguely reference the 100:1 powder cocaine-crack cocaine ratio in his brief, and when we pushed him at oral argument, he finally raised the argument. We therefore vacate Green's sentence and remand for resentencing.

## I. Background

In February 2007 authorities in Madison, Wisconsin, learned from an informant that Green was selling crack and firearms. In cooperation with law enforcement, the informant arranged to meet Green and buy one-quarter ounce of crack for $175. When Green arrived by car at the appointed meeting place, he was accompanied by Patton, his girlfriend. Police officers surrounded Green's car with their cruisers and ordered him to step out, but he refused. When an officer attempted to remove Green from his car, Green put the car in reverse and accelerated. To avoid being pinned between Green's car and a police cruiser, the officer jumped into the car with Green and Patton. Green collided with a cruiser and a signpost and plowed into a snowbank. The officer who tried to pull Green out of the car was injured in this brief chase, and another officer narrowly avoided injury. After crashing his car, Green continued to struggle and was placed in custody only after officers subdued him using a Taser and chemical spray. Patton was arrested without incident.

A search of Green and the car turned up $2232 and a small amount of crack. Patton consented to a search of the couple's apartment, where police found 90 grams of crack, four loaded handguns, approximately $5000, digital scales, and miscellaneous drug paraphernalia. Patton spoke to investigators and told them that Green had been dealing crack for about a year. She admitted that she often drove him to sales, and that she had sold crack herself on occasion. In a later interview, Patton gave investigators information on Green's source for drugs and guns. Green also agreed to be interviewed but admitted only that for several months he had been receiving about half an ounce of crack every week from a source in Chicago.

### A. Kenneth Green's Sentencing

Green pleaded guilty to possessing crack with intent to distribute, 21 U.S.C. § 841(a)(1), and possessing a firearm in furtherance of that drug crime, 18 U.S.C. § 924(c). The district court estimated that Green's drug crime involved between 150 and 500 grams of crack, which corresponded to a base offense level of 34 under the 2006 version of the guidelines. U.S.S.G. § 2D1.1(c)(3) (2006). The court added two levels because Green had created a risk of death or serious injury when he tried to avoid capture, *id.* § 3C1.2, and

subtracted three levels for acceptance of responsibility, *id.* § 3E1.1(a). The resulting total offense level of 33, combined with Green's criminal history category of III, yielded a guidelines imprisonment range of 168 to 210 months. The court noted that under the version of § 2D1.1 that would take effect about three months later and reduce the base offense level for crack offenses, the range would be 135 to 168 months. For the gun count, the court calculated the guidelines sentence to be the minimum term required by statute, five years to be served consecutively to the drug count. 18 U.S.C. § 924(c)(1)(A)(i); U.S.S.G. § 2K2.4(b).

Green did not object to the guidelines calculations. Instead, he argued that he deserved a lower sentence based on the crack-powder ratio and his attempts to better himself through education and drug treatment while incarcerated. The government argued for a higher sentence based on Green's violent attempt to avoid arrest. The government also pointed out the informant's statement that Green was helping drug dealers in Chicago establish connections in Madison.

The court imposed a sentence of 168 months on the drug count and five years on the gun count. The court explained that its choice of sentence was based on the serious nature of the crimes, Green's extensive criminal history, the need to hold him accountable for his crimes, the need to deter him from further criminal activity, and the goal of avoiding sentencing disparities with similarly situated defendants.

## B. Nekeya Patton's Sentencing

Patton was sentenced 11 days after Green. The district court started with the same base offense level, 34, but "reduced" it to 32 in anticipation of the lower level that would apply to the same quantity of crack after the amendment to U.S.S.G. § 2D1.1 took effect about three months later. (Patton did not seek and the district court did not consider an even lower sentence based on the crack-powder ratio.) The court added two levels based on the firearms found in the apartment, U.S.S.G. § 2D1.1(b)(1), and subtracted three levels for acceptance of responsibility, *id.* § 3E1.1(a). This yielded a total offense level of 31, which combined with Patton's lack of criminal convictions led to a range of 108 to 135 months. The court agreed with the government that a below-range sentence was warranted based on Patton's substantial assistance, *see* U.S.S.G. § 5K1.1, and concluded that Patton's cooperation deserved the equivalent of a three-level reduction in offense level, which would yield an imprisonment range of 78 to 97 months. The court then imposed a sentence in the middle of that range, 84 months.

## II. Analysis

### A. Kenneth Green

Green argues that his prison sentence for the drug count is substantively unreasonable. But we need not address that argument because Green is entitled to a remand for resentencing in light of *Kimbrough*. Green made the 100:1 ratio argument to the district court and the court took into account the lower guidelines range that would apply after the then-proposed amendment to § 2D1.1 took effect, but it is impossible to tell whether the court would have in its discretion imposed a different sentence after *Kimbrough*. Therefore, we must vacate Green's sentence and remand for resentencing. *See United States v. Bush*, 523 F.3d 727, 728 (7th Cir. 2008); *United States v. Padilla*, No. 06-4370, 2008 WL 833994, at *7 (7th Cir. Mar. 31, 2008).

We note the government's argument that Green waived this claim by not raising it. *See United States v. Thomas*, No. 05-4222, 2008 WL 755297, at *6 (7th Cir. Mar. 24, 2008). It is unfortunate that Green's counsel did not mention *Kimbrough* when he filed the appeal in November 2007, five months after the Supreme Court granted certiorari and one month after it heard arguments in the case. Inexplicably, counsel did not discuss the case after the government noted it in its brief filed in February 2008, almost two months after the Supreme Court issued its opinion in *Kimbrough*. Nevertheless, at oral argument Green's counsel pointed us to a reference to the 100:1 ratio that he had included in his brief and at that point articulated an argument that his client was entitled to a remand for resentencing in light of *Kimbrough*. That is enough, but just barely, to raise the issue. *Cf. Haxhiu v. Mukasey*, 519 F.3d 685, 691-92 (7th Cir. 2008) (argument not waived when court can "identify an articulable basis for error" in the brief).

### B. Nekeya Patton

Patton has not responded to her lawyer's *Anders* submission. See Cɪʀ. R. 51(b). Our review is limited to the two potential issues identified in counsel's supporting brief. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002). And we skip right to counsel's analysis of the second issue, whether Patton could make any nonfrivolous challenge to her sentence, because that analysis is not correct. Patton's lawyer argues that a challenge based on substantive reasonableness would be frivolous, but she fails to address any argument regarding the crack-powder ratio. Even though the district court gave Patton the benefit of the amended § 2D1.1 three months before it took effect, the court could not have known of the greater discretion to sentence below the guidelines that follows from *Kimbrough.* In light of that case and our cases applying it, *see Bush*, 523 F.3d 727; *Padilla*, 2008 WL 833994; *United*

*States v. Taylor*, No. 06-4123, 2008 WL 782739 (7th Cir. Mar. 26, 2008), we cannot agree with counsel that an appellate argument challenging Patton's sentence would be frivolous.

Accordingly, we DENY counsel's motion to withdraw and direct counsel to file a brief on the merits addressing this issue and any others she deems appropriate. We do, however, invite the parties to file a joint motion for remand, should they deem that appropriate.

Briefing will proceed as follows:

1. The brief and required short appendix of the appellant are due by July 3, 2008.

2. The brief of the appellee is due by August 4, 2008.

3. The reply brief of the appellant, if any, is due by August 8, 2008.

Note:    Circuit Rule 31(e) (amended Dec. 1, 2001) requires that counsel tender a digital copy of a brief, from cover to conclusion, at the time the paper copies are tendered for filing. The file must be a text based PDF (portable document format), which contains the entire brief from cover to conclusion. Graphic based scanned PDF images do not comply with this rule and will not be accepted by the clerk.

        Rule 26(c), Fed. R. App. P., which allows three additional days after service by mail, does not apply when the due dates for briefs are specifically set by order of this court. All briefs are due by the dates ordered.

Important Scheduling Notice !

    Notices of hearing for particular appeals are mailed shortly before the date of oral argument. Criminal appeals are scheduled shortly after the filing of the appellant's main brief; civil appeals after the filing of the appellee's brief. If you foresee that you will be unavailable during a period in which your particular appeal might be scheduled, please write the clerk advising him of the time period and the reason for such unavailability. Session data is located at http://www.ca7.uscourts.gov/cal/calendar.pdf. Once an appeal is formally scheduled for a certain date, it is very difficult to have the setting changed. See Circuit Rule 34(e).