**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 24, 2008[*]
Decided September 24, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

KENNETH F. RIPPLE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

Nos. 06-3884 & 07-4035

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeals from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 04 CR 522 |
| JAIME ANDRADE and MARIBEL MIRAMONTES, | David H. Coar, |
| *Defendants-Appellants*. | *Judge*. |

**O R D E R**

Jaime Andrade and Maribel Miramontes were convicted of drug crimes, *see* 21 U.S.C. §§ 846, 841(a)(1), and both appeal their sentences. Ms. Miramontes argues that the government did not prove that the cocaine she sold was crack, and both defendants contend that in light of *United States v. Kimbrough*, 128 S. Ct. 128 (2007), they must be resentenced because the district

---

[*] After examining the briefs and records, we have concluded that oral argument is unnecessary. Thus these appeals are submitted on the briefs and records. FED. R. APP. P. 34(a)(2).

court did not appreciate its discretion to disagree with the higher penalty ranges the sentencing guidelines provide for cocaine offenses involving crack rather than powder. The government opposes Ms. Miramontes' first argument but concedes error under *Kimbrough*. We vacate the sentences in both cases and remand for resentencing.

A police informant asked Ms. Miramontes to procure drugs for him. The informant asked for "two," and Ms. Miramontes called her source, J.D., to ask if J.D. could "get two of 'em right now." R. 146 at 3. Together, Ms. Miramontes, her then-boyfriend Andrade, and the informant drove to meet J.D. After a short wait, J.D. approached their car and confirmed the price of $500 per ounce before returning with two bags containing a light-colored rock-like substance. Mr. Andrade asked the informant, "Does it look good to you?" R.99 at 95. The informant replied, "It's not that dark." *Id.* That comment prompted Ms. Miramontes and Mr. Andrade to defend the product. In the course of this exchange, Ms. Miramontes said, "I ain't no fucking crack head, I fucking deal." *Id.* at 96. The informant soon saw a police car and let Ms. Miramontes and Mr. Andrade out of his car.

Ms. Miramontes and Mr. Andrade were then indicted for conspiring to distribute and for distributing cocaine, but their cases diverged. Mr. Andrade pleaded guilty to the distribution count while declining to admit that the cocaine delivered to the informant was crack. At Mr. Andrade's sentencing in September 2006, the informant testified that he had requested crack and that the substance he received looked "[l]ike crack," meaning it was "a little bit darker than regular cocaine and hard." *Id.* at 11. A police officer testified that after the transaction he examined the product and, based on "the texture of the substance at the time and the coloring and the packaging," he recognized it to be crack. *Id.* at 34. And a chemist opined that the substance purchased by the informant was crack. The chemist noted that the parties had stipulated that the substance was cocaine base, and he pointed to "its visual appearance" and to the fact that "virtually all" cocaine base sold on the streets is crack. *Id.* at 53. He acknowledged that sodium bicarbonate (baking soda) and sodium carbonate are among several substances that can be used to strip the hydrochloride from powder cocaine in creating crack, but he explained that those substances are mostly consumed or drained away in the "cooking" process and thus are not always detectible in the end product. The substance the defendants sold to the informant did not contain bicarbonate, but even the toxicologist Mr. Andrade called as a witness conceded that crack does not have to contain bicarbonate.

The district court found that the substance was crack and used that drug in calculating a guidelines imprisonment range of 140 to 175 months. Mr. Andrade then argued that the court, in applying the sentencing factors under 18 U.S.C. § 3553(a), should take into account the sentencing differential under the guidelines for offenses involving like amounts of crack and powder cocaine. The court, however, imposed a prison sentence of 157 months without commenting on that contention.

Meanwhile, Ms. Miramontes was a fugitive. After her arrest she had given a statement acknowledging that the cocaine involved in the transaction was "hard," but she then skipped her scheduled change-of-plea hearing and absconded. When she was caught more than a year later,

she pleaded guilty to both counts of the indictment, but, like Mr. Andrade, declined to admit that the offense involved crack. Building on Mr. Andrade's sentencing hearing, Ms. Miramontes asserted that the absence of bicarbonate proved that the cocaine was not crack. The district court rejected her contention, and though characterizing the question as "close," once again found that the substance was crack. The court looked not only to the evidence at Mr. Andrade's sentencing but also to the additional testimony introduced by Ms. Miramontes. She called a consultant in toxicology and pharmacology, who opined that crack must be made with sodium bicarbonate to create the "classic crack" or "snap, crackle and pop" the drug produces when burned. Not only was this testimony inconsistent with the expert testimony introduced at Mr. Andrade's sentencing, but the consultant conceded that he was unfamiliar with the methodology the government had used to test the substance. The government, on the other hand, called a forensic chemist familiar with the testing methodology used. She testified that the prevalence of inositol (a cutting agent) in the substance might have made a low level of sodium bicarbonate undetectable.

The district court took the evidence under advisement and did not sentence Ms. Miramontes until November 28, 2007, after the revisions to the offense levels for crack in U.S.S.G. § 2D1.1 had taken effect. The court concluded that the substance was crack and that Ms. Miramontes had obstructed justice by absconding, resulting in a total offense level of 32. That figure, combined with Ms. Miramontes' criminal history category of II, yielded a guidelines imprisonment range of 135 to 168 months. The court imposed a term of 135 months but said it would have imposed a lower sentence if it were allowed to consider the sentence disparity between crack and powder cocaine.

On appeal, Ms. Miramontes first argues that the government did not prove by a preponderance of the evidence that she distributed crack rather than another form of cocaine base. The parties in this case stipulated that Ms. Miramontes sold cocaine base, but we have held that "not all cocaine base is crack." *See United States v. Edwards*, 397 F.3d 570, 571 (7th Cir. 2005). Different (and harsher) sentencing ranges apply under the sentencing guidelines to a defendant convicted of selling crack, as opposed to powder cocaine, and therefore the government must prove by a preponderance at sentencing that the cocaine base was crack. *United States v. Padilla*, 520 F.3d 766, 769 (7th Cir. 2008). We review the district court's finding on drug type for clear error. *Id*.

Ms. Miramontes mainly argues that the cocaine base in this case was not shown to be crack because it did not test positive for sodium bicarbonate. That contention ignores the expert testimony that bicarbonate need not be found in the end product and, in any event, is foreclosed by precedent. *See Padilla*, 520 F.3d at 770; *United States v. Lake*, 500 F.3d 629, 634 (7th Cir. 2007).

Otherwise, this case is unremarkable. We have held that drug type may be proved through "testimony from people familiar with the drug, . . . including veteran police officers and forensic chemists," or "an informant's belief that he was purchasing crack." *Padilla*, 520 F.3d at 771; *see Lake*, 500 F.3d at 634; *United States v. Buchanan*, 362 F.3d 411, 413 (7th Cir. 2004).

The government here introduced evidence in each category. The informant testified that he believed he was buying crack and that the product and the parties' conversation during the transaction were consistent with that understanding. Moreover, the police officer who received the cocaine base from the informant identified it as crack, as did a forensic chemist. The chemist also confirmed that forms of cocaine base other than crack are rarely seen in the United States, meaning it is highly unlikely that the cocaine base in this case was not crack. *See United States v. Kelly*, 519 F.3d 355, 364 (7th Cir. 2008). Accordingly, the district court's finding that Ms. Miramontes' crime involved crack is not clearly erroneous. *See Padilla*, 520 F.3d at 770-71; *United States v. Morris*, 498 F.3d 634, 644 (7th Cir. 2007) (holding that district court did not err in finding that drug was crack where DEA agent testified that substance was cocaine base and two law enforcement officers testified that appearance and packaging were consistent with crack); *United States v. Linton*, 235 F.3d 328, 329-30 (7th Cir. 2000) (upholding district court's finding that substance was crack where forensic chemist testified that substance was cocaine base and both chemist and veteran narcotics agent identified the substance as crack based upon its visual appearance and packaging).

Ms. Miramontes and Mr. Andrade next argue that they are entitled to a remand for resentencing under *Kimbrough*. The government concedes this point. Both defendants challenged the differential in the sentencing ranges for offenses involving equal amounts of crack and powder cocaine, *see United States v. Bush*, 523 F.3d 727, 729-30 (7th Cir. 2008), so they preserved the *Kimbrough* claim. Both defendants were sentenced before *Kimbrough*, when this court's precedent foreclosed imposing a sentence below the guidelines range merely because the district court disagreed with the crack-to-powder ratio in the guidelines. *See Bush*, 523 F.3d at 730. Because the judge was not constrained to apply the guidelines ratio to Ms. Miramontes or Mr. Andrade, their sentences must be vacated.

Because Ms. Miramontes originally was sentenced after the amended guidelines for cocaine became effective, the district court should employ those guidelines in calculating Ms. Miramontes' sentence on remand. After the sentence is calculated using the amended guidelines, the district court may then consider whether any further reduction, in light of *Kimbrough*, is warranted.

A somewhat different approach is called for with respect to Mr. Andrade. Mr. Andrade was sentenced prior to the adoption of the guideline amendments for crack cocaine. In *United States v. Taylor,* 520 F.3d 746 (7th Cir. 2008), we set forth the proper procedure for district courts to follow with respect to limited *Kimbrough* remands that had been "complicat[ed]" by the adoption of the amended guidelines. We stated:

> The district judge should hold off on telling us whether she is minded to resentence the defendant under *Kimbrough* until she decides whether to act favorably on the defendant's motion (if he makes one, or on the judge's own initiative, if the defendant does not) for relief under the Commission's new crack regime. If she decides to impose the same sentence under the new guideline, or if though she lowers the sentence the defendant believes that 18 U.S.C. § 3553(a) would warrant a still-lower sentence, or if he does not

make a proper motion for relief under the new guideline and she is not minded to grant such relief on her own initiative, she will then have to advise us whether she would be inclined to reduce his sentence under the dispensation granted sentencing judges by *Kimbrough*. To avoid delay, the judge should impose a deadline on the filing of a motion to resentence; we suggest 21 days after the date of this decision.

*Id.* at 748. Here, however, a somewhat simplified procedure can be followed because, while *Taylor* involved plain error review, here Mr. Andrade preserved his objection to the powder to crack ratio. Remand, therefore, is warranted. *See United States v. Padilla*, 520 F.3d 766, 775 (7th Cir. 2008). Similar to the procedure set forth in *Taylor*, the district court must decide whether, in response to a motion by the defendant or on the court's own motion, relief under the new guidelines is appropriate. Regardless of the district court's action with respect to the motion--whether it determines that no relief under the Guidelines should be granted or it decides to impose a new sentence under the amended guideline--the defendant's sentence still must be evaluated in light of *Kimbrough*.

Accordingly, we VACATE the judgments of the district court and REMAND for resentencing.