NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 11, 2007
Decided July 14, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-1428

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District |
| | of Illinois, Western Division. |
| v. | |
| | No. 06 CR 50009-1 |
| MARCUS WILLIAMS, | |
| *Defendant-Appellant*. | Philip G. Reinhard, |
| | *Judge*. |

**O R D E R**

As Marcus Williams was sitting in his parked Ford Expedition in the mid-morning of January 12, 2006, two Rockford, Illinois, police officers drove up in their squad car. Things unraveled quickly for Williams: the officers approached the Expedition, smelled marijuana, spoke briefly with Williams, and then asked him to get out. Instead of complying, Williams popped the SUV into gear and took off, followed closely by the officers. As he drove away, the officers saw him throw something out of the driver's window; later, they found a gun in the approximate area where Williams had been at the time. They caught up to him after about five

blocks and took him into custody. Because Williams had a felony on his record, he wound up with federal charges for illegal possession of a firearm. See 18 U.S.C. § 922(g)(1). Williams was unsuccessful in a motion to suppress both the physical evidence of the gun and various statements he made. He was convicted after a two-day jury trial and sentenced to 120 months' imprisonment, three years' supervised release, a fine of $250, and a special assessment of $100. On appeal, his primary argument is that the police were not entitled to approach the Expedition to begin with. Practically all of the evidence on which the conviction was based should have been suppressed, in Williams's opinion, and so he seeks reversal of his conviction on that basis.

## I

At the suppression hearing, Officer Brad Shelton testified that he and Officer Simon Solis were patrolling a part of downtown Rockford known for its drug activity when they noticed a tan Ford Expedition with no front license plate pulling over to the curb about 50 to 100 yards away. From that vantage point, they could not see that the Expedition had a valid temporary Illinois registration permit in the back. (Illinois does not issue temporary permits for the front of a car.) The officers watched the SUV, which was near a "no-loitering" sign, for a couple of minutes after it was parked. When the two occupants did not get out, Shelton and Solis pulled up in their squad car, left their own vehicle, and approached the driver's side. They did not engage the squad car's siren or overhead flashing lights, but the hazard lights may have been on.

As the officers neared, the front-seat passenger, Toby Brewer, climbed out of the SUV and met up with Officer Solis. Shelton headed for the driver's side, where Williams rolled down his window, allowing air scented with the odor of marijuana to waft out. Shelton asked Williams what he was doing, and Williams replied that he was dropping off a friend. Shelton then noticed that Williams had a cell phone and a plastic baggie in his right hand; he asked what the baggie was and if he could see it. Williams claimed that he had nothing, dropped the baggie and phone, and showed his empty hand to Shelton.

At that point, Shelton asked Williams to get out of the Expedition. Instead of doing so, as we have already mentioned, Williams roared off, leaving Brewer behind. Solis and Shelton jumped back into the squad car and pursued Williams for a few blocks. As they were doing so, they saw him throw something from the window of the Expedition. Williams eventually pulled over and was ordered out at gunpoint. The officers arrested him and searched the SUV, finding a plastic baggie, marijuana, two face masks, a pry bar, and a wire coat hanger. They discovered a .45 caliber Glock handgun on the ground near where they had seen Williams toss an object out the window.

The next morning, Rockford police detectives Torry Regez and David Lee interviewed Williams. They advised him of his *Miranda* rights, and, after signing a waiver form, Williams agreed to speak to them. He admitted that he had possessed the Glock the day before and that he intended to use it to rob a friend.

Williams moved to suppress the gun, the items found in his Expedition, and his post-arrest confession. (In this court, he has abandoned the argument that his confession was obtained in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966)). He focuses on the initial encounter he had with the police, when they walked up to the SUV, spoke with him briefly, and ordered him to get out. This much, he claims, was done without either probable cause (for a full-blown search) or even reasonable suspicion (for a search pursuant to *Terry v. Ohio,* 392 U.S. 1 (1968)). In denying his motion to suppress, the district court ruled that the officers' initial approach of the Expedition was a routine encounter that did not constitute a seizure under the Fourth Amendment. Once Shelton was by Williams's door, a number of facts supported at least a *Terry* encounter: the smell of the marijuana, the reputation of the area where the SUV was parked, the fact that Williams lied about holding the baggie (and the cell phone, though we note that it would almost have been more suspicious if Williams had not been holding a cell phone, given their prevalence in modern society), and the fact that Brewer got out of the SUV as the officers came near. Williams's attempt to flee, the court said, bolstered its probable cause determination. Finally, the court added in the alternative that even if the officers' initial approach of Williams had to be assessed under the Fourth Amendment, it was supported by probable cause to believe that Williams had committed a traffic violation, because a reasonable observer would have thought that he had no front license plate (as required by Illinois law).

## II

Our review of the district court's decision to deny the motion to suppress proceeds under a dual standard: we evaluate the court's factual findings for clear error and we review its legal determinations *de novo. United States v. Lake,* 500 F.3d 629, 632 (7th Cir. 2007).

Williams contends that both he and his SUV were seized when Officers Shelton and Solis approached his parking space. He argues that their impression that there was no front license plate was not enough to give them even reasonable suspicion, let alone probable cause, for the purported seizure. The district court, however, was persuaded that the initial approach of the officers was not covered by the Fourth Amendment at all. As we had occasion to point out recently in *United States v. Clements,* 522 F.3d 790 (7th Cir. 2008), "[a] consensual encounter between an officer and a private citizen does not trigger the Fourth Amendment." *Id.* at 794. There, as here, the defendant complained that he and his car had been seized when the police approached it on the street. We responded as follows:

> The police encounter in this case was not a seizure for Fourth Amendment purposes. Clements had voluntarily stopped his car; he did not stop because of the flashing police lights. Likewise, Clements was not seized when the officers approached his car. The officers approached the car to investigate why the car had been parked and running on a public street for four hours, a circumstance unusual enough to at least merit some investigation.

*Id.* Although Williams had not been parked for four hours, the key point of *Clements* is that when the police walk up to someone who is either out on the street or sitting in a car that was already stopped (in other words, the police had nothing to do with the driver's decision to pull over and park), there is no seizure at all. See *Florida v. Bostick,* 501 U.S. 429, 434 (1991); see also *United States v. Douglass,* 467 F.3d 621, 623-24 (7th Cir. 2006); *United States v. Broomfield,* 417 F.3d 654, 655-56 (7th Cir. 2005); *United States v. Williams,* 945 F.2d 192, 195 (7th Cir. 1991).

Since the initial approach of the police officers was not a seizure for Fourth Amendment purposes, the question whether the officers were correct to think that Williams was in violation of Illinois law by failing to have a front license plate is beside the point. Thus, even if Williams is correct that it would be objectively unreasonable for a police officer to conclude that a vehicle like his was violating the law, because vehicles with valid temporary registration permits are exempt from 625 ILCS 5/3-413(a) (requiring front plates), it makes no difference. The district court recognized this. Contrary to Williams's assertion in his brief that the district court found that the officers had effectuated a *Terry* stop, the court found precisely the opposite to be true. It held that the approach was not a *Terry* stop and thus did not require either reasonable suspicion or probable cause.

Once Officer Shelton was standing by the driver's side window, he detected the odor of marijuana almost immediately. That was enough to supply probable cause to arrest Williams and search his truck. See *Broomfield,* 417 F.3d at 656-57. Thus, assuming for the sake of argument that Shelton was attempting to "seize" Williams when he asked Williams to get out of the SUV, Shelton had an adequate basis for doing so. Williams's decision to flee did nothing but reinforce the probable cause to arrest that the police already had. See *Illinois v. Wardlow,* 528 U.S. 119, 124-25 (2000). With respect to the incriminating gun in particular, Williams was not stopped at all until the officers pulled him over at the end of the chase. By that time, he had already thrown the gun out the window, thus abandoning it along with any right he may have had under the Fourth Amendment to object to its admission at trial. See *California v. Hodari D.,* 499 U.S. 621, 629 (1991).

In summary, we conclude that the district court properly denied Williams's motion to suppress, and we thus AFFIRM the judgment of the district court.