NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted July 17, 2008
Decided July 18, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-3867

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee*,

        *v.*

JOHNNY J. GRAYSON,
        *Defendant-Appellant*.

Appeal from the United States District
Court for the Northern District of Illinois,
Eastern Division.

No. 04-CR-964-1

Joan B. Gottschall,
*Judge*.

## O R D E R

Johnny Grayson met an informant at a Wendy's restaurant in Elgin, Illinois, and sold him a baggie of drugs for $1,300.  Grayson pleaded guilty to one count of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1), but he put the government to its burden of proof at sentencing regarding whether the drugs he sold were, as the government charged, 58 grams of the crack form of cocaine base.  After an evidentiary hearing, the district court found that Grayson did in fact sell 58 grams of crack and sentenced him to 120 months' imprisonment, the statutory mandatory minimum.  See *id.* § 841(b)(1)(A)(iii).

Grayson filed a notice of appeal, but his appointed counsel now seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he is unable to discern a nonfrivolous issue to pursue. Because counsel's supporting brief is facially adequate and Grayson has not responded to his attorney's motion, see CIR. R. 51(b), we review only the potential issues that counsel has identified. See *United States v. Tabb*, 125 F.3d 583, 584 (7th Cir. 1997) (per curiam). Grayson does not wish to withdraw his guilty plea, so counsel appropriately avoids any analysis of the voluntariness of the plea or the adequacy of the colloquy. See *United States v. Knox*, 287 F.3d 667, 671-72 (7th Cir. 2002).

Counsel first considers whether Grayson could challenge the district court's factual finding that the bag of drugs he sold to the informant contained 58 grams of crack. The government had to prove by a preponderance of the evidence that it did. See *United States v. Soto-Piedra*, 525 F.3d 527, 529 (7th Cir. 2008)*; United States v. Padilla*, 520 F.3d 766, 769 (7th Cir. 2008). We review the district court's determination that the government met that burden for clear error, see *Soto-Piedra*, 525 F.3d at 529; *Padilla*, 520 F.3d at 769; *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007), and will affirm absent "a definite and firm conviction that a mistake has been made," *United States v. Fudge*, 325 F.3d 910, 919-20 (7th Cir. 2003); see also *Padilla*, 520 F.3d at 769.

No forensic test can determine whether a substance is "crack," because crack is the street name for a type of cocaine base, not a chemical term. See, *e.g.*, *United States v. Booker*, 260 F.3d 820, 823 (7th Cir. 2001) ("[S]cientifically, 'cocaine base' includes other forms of the drug besides crack cocaine."); *United States v. Robinson*, 144 F.3d 104, 109 (1st Cir. 1998) ("[C]rack and all other forms of cocaine base are identical at the molecular level."). There are several ways to convert powder cocaine into cocaine base, but the most common method is to dissolve powder cocaine (cocaine hydrochloride) and baking soda (sodium bicarbonate) in boiling water. See *United States v. Edwards*, 397 F.3d 570, 574 (7th Cir. 2005); *cf.* U.S.S.G. § 2D1.1(c), note (D). The baking soda separates the hydrochloride molecule from the cocaine, leaving cocaine base—a solid, rocklike substance that can be smoked—behind. See *Edwards*, 397 F.3d at 574. Trace amounts of sodium bicarbonate *may* be detectable in some samples of crack, but its presence is not required. See *United States v. Lake*, 500 F.3d 629, 634 (7th Cir. 2007); see also *United States v. Waters*, 313 F.3d 151, 155 (3d Cir. 2002) ("[I]t is *not* necessary for the government to show that a substance contains sodium bicarbonate in order to demonstrate by a preponderance of the evidence that the drugs in question are crack.").

At his four-day sentencing hearing, Grayson called Dr. Michael Evans, a toxicologist, to testify regarding the composition of the drugs Grayson sold. Evans testified that adding baking soda (sodium bicarbonate) to powder cocaine is "the only method" for making crack. He further testified that trace amounts of sodium bicarbonate will always be present

in street-dealt crack, because only a chemist in a laboratory can remove all sodium bicarbonate from the finished product. Evans never tested the drugs Grayson sold, but after reviewing the government chemist's report, Evans opined that the drugs were not crack because there was no "forensically acceptable evidence" of sodium bicarbonate in Grayson's sample.

The government's expert chemist, Dr. Camala Dubach, testified that the drugs were cocaine base. She also testified that crack is typically "off-white" and "rock-like" in appearance and that Grayson's sample was both. According to Dubach, Dr. Evans's testimony concerning the absence of sodium bicarbonate in the sample was based on a misreading of her report. The report stated that the sample contained "sodium bicarbonate (possibly another substance)." Dubach explained that the notation was not, as Evans believed, an equivocation on the presence of sodium bicarbonate. Rather, the notation meant that sodium bicarbonate was definitely present and *another* insoluble additive was possibly present as well.

Finally, the government called a DEA agent, who testified that Grayson and the informant used code words for crack—such as "hard" and "butter"—during recorded conversations that preceded the controlled buy. He also testified that the amount the informant asked to buy from Grayson, "two and a cutie hard," is a distribution quantity much more commonly associated with crack than powder cocaine. Finally, he testified that the drugs were a "white, rocky substance."

"[T]he testimony of both a forensic chemist and a veteran police officer is sufficient proof that a substance is crack." *Lake*, 500 F.3d at 634; see also *United States v. Buchanan*, 362 F.3d 411, 413 (7th Cir. 2004); *United States v. Linton*, 235 F.3d 328, 329-30 (7th Cir. 2000). The district court was properly skeptical of Dr. Evans's testimony that the sample was not crack because it did not contain sodium bicarbonate; that testimony is factually inaccurate. See *Lake*, 500 F.3d at 634. Because the government presented substantial evidence that Grayson distributed crack, counsel is correct that it would be frivolous for Grayson to challenge the drug-type finding on appeal.

Likewise futile would be any argument challenging the district court's finding that the quantity of crack was at least 50 grams. The DEA agent testified that the informant arranged to buy "two and a cutie hard," a reference to 2.25 ounces of crack, or 63.78 grams. At the time of the sale, Grayson told the informant that the bag "might be a little light," and to contact him "if it's short a gram or anything." Dr. Dubach testified that when she performed her tests less than two weeks after the sale, the crack weighed 58.2 grams.

Grayson attempted to contradict this finding by presenting testimony from June Henderson, the Director of Human Resources at Dr. Evans's laboratory. Henderson

minored in chemistry at college and weighed drug samples at the lab "over a hundred" times, but she has no specialized knowledge or experience with testing controlled substances. Henderson admitted that she did not know the chemical composition of cocaine base, nor did she know how crack is manufactured. Nevertheless, after the drugs were sent to Evans's laboratory for independent testing, they were examined not by Evans or by any other forensic chemist on staff, but by Henderson. Henderson testified merely as a fact witness to having weighed the sample. According to her measurements, the sample weighed only 22.4 grams, not 58 grams as claimed by the government. On cross-examination, the government probed potential explanations for the discrepancy. The package sent to the lab consisted of an evidence bag containing two smaller baggies, which contained the drugs. Henderson testified that when she weighed the crack—almost two-and-a-half years after Grayson sold it—she discarded liquid and paste that clung to the sides of the baggies, "patted" the baggies dry, and then dried the remaining substance in an oven before putting it on the scale.

The district court was entitled to disregard Henderson's unpersuasive testimony in determining the weight of the drugs Grayson sold. Henderson weighed the sample more than two years after the sale, and crack weighs less over time, because it releases moisture that evaporates. *Cf. United States v. Dean*, 59 F.3d 1479, 1494-95 & n.28 (5th Cir. 1995); *United States v. Tucker*, 20 F.3d 242, 243 (7th Cir. 1994); *United States v. Thomas*, 11 F.3d 620, 631-32 (6th Cir. 1993). Henderson discarded as much of the moisture in the sample as she could, then dried the rest in an oven before weighing it. According to Grayson, that methodology was reasonable because "waste water" left over after production of crack should not be used to calculate drug weight. See *United States v. Johnson*, 999 F.2d 1192, 1194, 1196 (7th Cir. 1993). In *Johnson*, we ruled that water left over after the manufacture of crack should not be included in determining a defendant's guidelines range—even though the water contained trace amounts of cocaine—because the waste water was not ingestible and therefore not marketable. *Id.* at 1196. The moisture in the drugs Sanders's sold, on the other hand, was a component of fully processed, consumable, marketable crack. Recognizing this difference, the district court rejected Sanders's "waste water" argument and relied instead on Dr. Dubach's weight of 58 grams. We concur with counsel that it would be frivolous to challenge that ruling on appeal.

The fact that the district court's drug-type and quantity findings are unassailable dooms the final argument considered by counsel: whether Grayson could argue that he should have received a lower prison sentence. Because Grayson sold at least 50 grams of crack, the district court could not impose anything less than the ten-year sentence it did. See 21 U.S.C. § 841(b)(1)(A)(iii); *cf. United States v. Duncan*, 479 F.3d 924, 930 (7th Cir. 2007). With a criminal history category of III, Grayson is ineligible for the safety valve, see 18 U.S.C. § 3553(f)(1); U.S.S.G. § 5C1.2(a)(1), and the Supreme Court's decision in *Kimbrough v. United States*—authorizing a district court to sentence a defendant below the guidelines

range if it disagrees with the policy of punishing crack offenses more harshly than those involving powder cocaine—does not help him either.  See 128 S.Ct. 558, 572 (2007) (sentencing courts "need not adhere to the 100-to-1 ratio for crack cocaine quantities other than those that trigger the statutory mandatory minimum sentences); *United States v. Johnson*, 517 F.3d 1020, 1023-24 (8th Cir. 2008).  We thus agree with counsel that it would be frivolous for Grayson to argue that the sentence the district court imposed—the lowest permissible by law—is unreasonable.

Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.