[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 5, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10708
Non-Argument Calendar

_____

D. C. Docket No. 06-10017-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AMIL GONZALEZ-RODRIGUEZ,
a.k.a. Yamil Gonzalez-Rodriguez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 5, 2008)**

Before ANDERSON, DUBINA and MARCUS, Circuit Judges.

PER CURIAM:

Appellant Amil Gonzalez-Rodriguez appeals his convictions and sentences for conspiracy to smuggle aliens, in violation of 8 U.S.C. § 1324(a)(1)(B)(i) (Count 2), and providing false information during a boarding, in violation 18 U.S.C. § 2237(a)(2)(B) (Count 68). The district court sentenced him to a total term of 144 months' imprisonment, which consisted of 120 months' imprisonment as to Count 2 and 60 months' imprisonment as to Count 68, with 36 months of that sentence to be served concurrently, and 24 months to be served consecutively with the sentence for Count 2.

## I.

On appeal, Gonzalez-Rodriguez first argues that the evidence was insufficient to support his convictions. With regard to his conspiracy conviction, Gonzalez-Rodriguez argues that the evidence at most showed that he was merely present on a go-fast vessel that was smuggling 31 Cuban migrants into the United States, and there was no evidence showing that he induced or encouraged the migrants to come onto the vessel or that he knew what the unlawful plan was and joined it. With regard to his conviction for giving false information during a boarding, he argues the evidence was insufficient to show that he was a crew member aboard the boat, that his false statement regarded a member of the vessel's crew, or that the statement was made "during a boarding." He contends that the

2

boarding was complete when he gave a false name while on the United States Coast Guard ("USCG") vessel. In his reply brief, Gonzalez-Rodriguez argues that the district court erred by not informing the jury that mere presence and association is insufficient to support a conspiracy conviction, in response to its question asking whether being on the boat was enough evidence to support a conspiracy conviction.

"We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government." *United States v. Garcia*, 405 F.3d 1260, 1269 (11th Cir. 2005). We also make all reasonable inferences and credibility choices in favor of the government and the jury's verdict. *Id.* We must affirm "unless, under no reasonable construction of the evidence, could the jury have found the [defendant] guilty beyond a reasonable doubt." *Id.* We review challenges to the sufficiency of the evidence raised for the first time on appeal for plain error. *See United States v. Hunerlach*, 197 F.3d 1059, 1068 (11th Cir. 1999). To establish plain error, the defendant must show: (1) that an error occurred; (2) that the error was plain; and (3) that the error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776, 123 L. Ed.2d 508 (1993). We will correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation and

alteration omitted). There can be no plain error "where neither the Supreme Court nor [our] Court has ever resolved an issue, and other circuits are split." *United States v. Aquillard*, 217 F.3d 1319, 1321 (11th Cir. 2000) (quoted in United *States v. White*, 416 F.3d 1313, 1319 (11th Cir. 2005)).

### A. Conviction for Conspiracy to Smuggle Aliens, 8 U.S.C. § 1324(a)(1)(A)(v)(I)

Gonzalez-Rodriguez was charged and convicted of conspiracy to encourage and induce aliens to come to the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). Section 1324 provides that it is a federal offense for "[a]ny person" to engage in a conspiracy to "encourage[] or induce[] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law." 8 U.S.C. § 1324(a)(1)(A)(iv), (v)(I). We have held that to prove a conspiracy the government must show: "(1) that an agreement existed between two or more persons to commit a crime; (2) that the defendant knowingly and voluntarily joined or participated in the conspiracy; and (3) a conspirator performed an overt act in furtherance of the agreement." *United States v. Ndiaye*, 434 F.3d 1270, 1294 (11th Cir.), *cert. denied*, 127 S. Ct. 128 (2006). The existence of a conspiracy may be proven by circumstantial evidence. *Id.* We have held that,

4

because the jury is free to choose among reasonable constructions of the evidence, "the evidence may be sufficient even if it is not entirely inconsistent with conclusions other than guilt." *Id.*

We have held that close association with a conspirator or mere presence at the scene of the crime, alone, is insufficient evidence of knowing participation in a conspiracy; however, presence may be "a material and probative factor the jury can consider in reaching its verdict." *United States v. Iglesias*, 915 F.2d 1524, 1527 (11th Cir. 1990). Further, "the defendant's knowledge of and membership in the conspiracy may be proven by acts on his part which furthered the goal of the conspiracy." *United States v. Cross*, 928 F.2d 1030, 1042 (11th Cir. 1991). In the case of a conspiracy, the government need not prove that the substantive crime was actually committed, but instead must only prove that some overt act was taken in furtherance of the conspiracy. *United States v. Sutherland*, 656 F.2d 1181, 1186 n.4 (5th Cir. Unit A 1981); *see also United States v. Chandler*, 388 F.3d 796, 805-06 (11th Cir. 2004) (noting that what distinguishes a conspiracy from the substantive offense is that the agreement is the essential element of a conspiracy crime). The overt act can be committed by any one of the conspirators and need not itself constitute a crime. *United States v. Schlei*, 122 F.3d 944, 975 (11th Cir. 1997).

Because Gonzalez-Rodriguez argues for the first time in his reply brief that the district court erred in not instructing the jury that "mere presence and association" would not be enough to support a conspiracy conviction, in response to its question, his argument is deemed abandoned. *United States v. Magluta*, 418 F.3d 1166, 1185-86 (11th Cir. 2005) (concluding defendant abandoned issue raised for first time in reply brief). Because evidence was introduced at trial showing that he sat at the center console of the go-fast vessel, alongside his two codefendants, in contrast to the 31 migrants holding on to the deck, appeared to confer with his codefendants when they discovered that the USCG were pursing them, and appeared to direct a migrant to cover the go-fast vessel's engines from disabling fire, we conclude that the evidence showed he was more than merely present. Viewing the evidence and all credibility determinations in the light most favorable to the government, we also conclude that the evidence was sufficient to show that Gonzalez-Rodriguez conspired with his codefendants to induce and encourage aliens to unlawfully enter the United States.

**B.  Conviction for providing false information during a boarding, 18 U.S.C. § 2237(a)(2)(B)**

Section 2237(a)(2)(B) of Title 18 makes it unlawful for "any person on board a vessel of the United States, or a vessel subject to the jurisdiction of the

6

United States" to "provide materially false information to a Federal law enforcement officer during a boarding of a vessel regarding the vessel's destination, origin, ownership, registration, nationality, cargo, or crew." 18 U.S.C. § 2237(a)(2)(B). The parties both agree that the statute requires the government to prove, in this case, among other things, that:(1) Gonzalez-Rodriguez was a member of the vessel's crew; (2) that the false information provided was in relation to a matter regarding the vessel's crew; and (3) that the false information was made "during a boarding."

We conclude from the record that the evidence regarding Gonzalez-Rodriguez's location, conference with his codefendants, and his direction of a migrant was sufficient to show that he was a crew member aboard the go-fast vessel, and that his false statement regarding his identity pertained to a matter regarding the vessel's crew. Gonzales-Rodriguez's argument that the government did not prove that his statement was made "during a boarding," was not made in the district court in conjunction with his motion for an acquittal. Thus, we consider his argument under plain error review. Because the statute, and neither our court nor the Supreme Court has defined the term, any error in the case would not be plain. *See Aquillard*, 217 F.3d at 1321. Accordingly, we affirm his § 2237(2)(B) conviction.

## II.

Next, Gonzalez-Rodriguez argues that the government committed misconduct by not giving immunity to Raphael de Jesus Infante, the migrant that blocked the engines on the go-fast vessel, and by claiming during trial in bad faith that Gonzalez-Rodriguez instructed or ordered Infante to attempt to cover the engine of the vessel. Gonzalez-Rodriguez explains that the only evidence that the government had as to why Infante went to the engines was Infante's own written statement that he acted on his own. He wanted to subpoena Infante for trial, but Infante's counsel informed him that Infante would invoke the Fifth Amendment. Thus, he asserts that he was extremely prejudiced by the government's failure to grant Infante immunity because he was not able to call Infante to rebut the government's false assertion that Gonzalez-Rodriguez ordered Infante to climb on the vessel's engines. He also argues that the government improperly influenced the jury by making the false assertions about his conduct, and it should have shared Infante's statement with the jury.

The district court's determinations regarding prosecutorial misconduct involve mixed questions of law and fact, and therefore, are reviewed *de novo*. *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 1305 (2007). "We will not review decisions regarding immunity unless

8

substantial evidence shows that the government's action was a clear abuse of discretion that violated the due process clause." *United States v. Lake*, 500 F.3d 629, 633 (11th Cir. 2007)

In reviewing a claim of prosecutorial misconduct, we assess (1) whether the challenged comments were improper, and (2) if so, whether they prejudicially affected the substantial rights of the defendant. *Eckhardt*, 466 F.3d at 947. "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *Id.* We have identified the following four factors to consider in determining whether or not conduct had a reasonable probability to change the outcome of a trial:

> 1) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; 2) whether they are isolated or extensive; 3) whether they were deliberately or accidentally placed before the jury; and 4) the strength of the competent proof to establish the guilt of the accused.

*Davis v. Zant*, 36 F.3d 1538, 1546 (11th Cir. 1994) (citations omitted). We have held that prosecutors have "significant discretion" to decline to grant immunity to a witness, "especially when it is likely that the witness will perjure himself." *Lake*, 500 F.3d at 633.

Because Infante's statement was inconsistent with a Coast Guard Petty

Officer's personal observations and the video evidence, we conclude that the government did not abuse its discretion or act improperly by refusing to grant Infante immunity. Further, in light of the Petty Officer's testimony and the video evidence, we conclude that the government had a good faith basis to believe that Gonzalez-Rodriguez did direct the migrant. Accordingly, we conclude that the government did not commit prosecutorial misconduct.

## III.

Next, Gonzalez-Rodriguez argues that the district court did not comply with 18 U.S.C. § 3553(c)(2) because it failed to give specific reasons in open court or in a written order for its above-guideline sentence for his conviction for giving a false statement during a boarding. Specifically, he argues that the court's reasoning only related to his alien smuggling conviction, and the alleged false statement he gave to the USCG was not, in any way, in furtherance of the alleged smuggling conspiracy. He also notes that 18 U.S.C. § 3584 requires a sentencing court to consider the 18 U.S.C. § 3553(a) factors to determine whether a consecutive or concurrent sentence is warranted.

We review *de novo* whether a district court complied with § 3553(c). *United States v. Bonilla*, 463 F.3d 1176, 1181 (11th Cir. 2006). However, to the extent that Gonzalez-Rodriguez failed to object to the court's failure to provide a

written statement, our review is for plain error. *See United States v. Massey*, 89 F.3d 1433, 1441 (11th Cir. 1996).

Section § 3553(c)(2), requires the district court to state, in open court, the reason for its particular sentence, and, if the sentence "is outside the range . . ., the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment." 18 U.S.C. § 3553(c)(2). Section 3584 requires a district court to consider the § 3553(a) factors when imposing concurrent and consecutive sentences. 18 U.S.C. § 3584(b).

The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or medical care or other correctional treatment; (6) the kinds of sentences available; (7) the guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a). A district court need not explicitly consider every single § 3553(a) factor. *United States v.*

11

*Scott*, 426 F.3d 1324, 1329-30 (11th Cir. 2005). A statement that the court has considered the factors and the parties' arguments at sentencing is enough. *Id.* at 1330.

Because the record demonstrates that the district court considered Gonzalez-Rodriguez's conduct as a whole, stated in open court its reasoning for his above-guideline sentence, explicitly considered the § 3553(a) factors, and indicated it was imposing consecutive sentences so the sentence could be consistent with the sentences of his codefendants, the only error the district court committed was its failure to state its reasons in a written order. However, because the district court stated in open court its reasons for the above-guidelines sentence, and Gonzalez-Rodriguez had adequate information from which he could file an appeal, his substantial rights were not affected by the court's error.

**IV.**

Finally, Gonzalez-Rodriguez argues that the district court failed to address all three defendants individually, but instead chose to apply the § 3553(a) factors on them as a group, particularly in analyzing the factor accounting for deterrence. He contends that the district court failed to take into account that his role was substantially less than his codefendants, and he was just simply one of several migrants on board. Gonzalez-Rodriguez also adopts the arguments presented in

12

his codefendants' briefs on appeal. His codefendants argued that the sentences they received were unreasonable because they were impermissibly based on regional and local factors.

We review a final sentence for reasonableness. *United States v. Talley*, 431 F.3d 784, 785 (11th Cir. 2005). In conducting this review, we apply a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. ___, 128 S. Ct. 586, 591, 597, 169 L. Ed. 2d 445 (2007). We first review whether the district court committed a procedural error, such as incorrectly calculating the guidelines, treating the guidelines as mandatory, failing to consider the § 3553(a) factors, imposing a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. *Id.* at ___, 128 S. Ct. at 597. If there were no such procedural errors, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* This review involves inquiring whether the § 3553(a) factors support the sentence. *Id.* at __, 128 S. Ct. at 600. A defendant challenging his sentence bears the burden of establishing that it is unreasonable. *See Talley*, 431 F.3d at 788.

While joint sentencing of convicted codefendants is permissible, *see U.S. v. Lindsey*, 200 Fed. App'x. 902 (11th Cir. 2006), a district court must nonetheless rely on individualized findings of fact when imposing a sentence on each

codefendant. *See* 18 U.S.C. § 3553(a)(1) (noting that a sentencing court "shall consider ... circumstances of the offense and the history and characteristics of the defendant"). However, "a sentencing court's failure to make individualized findings regarding the scope of the defendant's activity [in a conspiracy] is not grounds for vacating a sentence if the record support[s] the court's determination with respect to the offense conduct." *United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002).

The record here demonstrates that the district court considered Gonzalez-Rodriguez's individual role in the offense when denying his request for a mitigating-role reduction. Although the district court, when imposing the sentence, considered the three codefendants simultaneously, the record indicates this was an indication that the court thought their offense conduct and culpability was relatively the same. Further, although the district court did consider local and community factors, this did not render Gonzalez-Rodriguez's sentence unreasonable because a reading of the record revealed that the sentence was not substantially affected by consideration of those facts. Rather, Gonzalez-Rodriguez's upward variance resulted primarily from other factors, such as the nature and circumstances of the offense, as well as the desire to deter all future smuggling. Accordingly, the sentence was not unreasonable.

14

For the above-stated reasons, we affirm Gonzalez-Rodriguez's convictions and sentences.

**AFFIRMED.**