UNITED STATES of America,
Plaintiff–Appellee,

v.

Alexander WILDERNESS,
Defendant–Appellant.

No. 98–2000.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1998.

Decided Nov. 23, 1998.

Andrew B. Baker, Jr. (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff-Appellee.

R. Cordell Funk (argued), Funk & Foster, Hammond, IN, for Defendant-Appellant.

Before CUDAHY, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Alexander Wilderness approached Roy Jean Evans as she was parking her car at midnight. Wilderness drew a gun and demanded money. When Evans resisted, Wilderness pistol-whipped her, took her car keys, shoved her into the back seat, confiscated her cellular phone so that she could not call for help, and drove away. Eventually Wilderness slowed the car and forced Evans out while the vehicle was still moving. A radio bulletin alerted police to the model and license number of the stolen car and the fact that the thief was armed and violent. At 4:45 a.m. officer Edward Dame of the Gary, Indiana, police found the car and followed footprints in the snow to a house about a block and a half away. Another officer came in response to a call for assistance. The two found Wilderness asleep in the house. His shoes matched the footprints they had followed. Wilderness revealed the location of the gun and cell phone and asked the police whether they had used the phone to trace him (for he had made a call after stealing the phone from Evans). Wilderness was convicted of carjacking, in violation of 18 U.S.C. § 2119, and of using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). The sentence was 235 months' imprisonment—a shock to Wilderness, whose criminal career had thus far produced only short terms meted out by state courts.

Wilderness pins his principal hope on persuading us that the district court erred in holding that the police were entitled to enter the house (and therefore to arrest him and seize the gun and phone, which made conviction inevitable). The prosecutor does not contend that the entry was justified as hot pursuit (but see *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *United States v. Holland*, 511 F.2d 38 (6th Cir.1975)) and argues instead that the entry rests on consent. According to the police, Bernard Nichols answered their knocks on the door; Nichols was soon joined by Senovia McKinley, owner of the house and Wilderness's cousin. The officers testified that they informed Nichols and McKinley that they were looking for a carjacker and politely asked for permission to search for whoever had entered the house most recently. They conceded that one officer had a gun in hand but contended that it was pointed toward the floor. According to their testimony, Nichols and McKinley granted permission and directed the officers to the bedroom where Wilderness was asleep. Nichols and McKinley told a different story. According to their testimony, the officers threatened to break down the door if they did not open it; once the door was open, the police pointed a gun at Nichols, told him to sit down and shut up, and proceeded to search without consent. McKinley testified that the police ordered her to sit on a couch and "shut her damn mouth up."

Two witnesses told the truth and two lied. The district judge determined that the officers were the truth-tellers, and that Nich-

ols and McKinley were the perjurers. A decision based on the resolution of a swearing contest cannot be clear error unless undisputed evidence is incompatible with the testimony the judge believed. See *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). No undisputed facts undercut the judge's decision to credit the officers' testimony, which was internally consistent. Wilderness relies on *United States v. Jerez*, 108 F.3d 684 (7th Cir.1997), which observed that nighttime entries are disfavored under the fourth amendment, but *Jerez* does not disable a district judge from finding that the occupants of a dwelling consented to a search, no matter the time of day. We concluded in *Jerez* that even under the police version of events, the officers had taken the suspects into custody (without probable cause) before they obtained consent. Here, by contrast, if the officers were telling the truth then Nichols and McKinley were never in custody and were free to consent. The judge determined that the officers were indeed telling the truth, which is conclusive against Wilderness.

■ His second contention is that his confession was inadmissible because he was only 16 at the time and lacked the assistance of either a parent or an attorney. The police gave Wilderness *Miranda* warnings at McKinley's house. Gary notified the FBI of the carjacking, and agent Tom Gancarz met Wilderness at the police station and gave another round of *Miranda* warnings. Wilderness signed a waiver form but inconsistently asked for an attorney; Gancarz immediately ended the interview. Some 90 minutes later Wilderness asked to speak to Gancarz, who returned, read the *Miranda* warnings for a third time, and obtained a second written waiver. See *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Wilderness then attempted to put events in a favorable light by contending that he clobbered Evans with the gun only after she began to hit him, and that he took the car to drive Evans to the hospital (but changed his mind and ejected Evans when it occurred to him that he would be arrested). Although only 16, Wilderness was familiar with criminal investigations; during the three years before the carjacking he had been arrested seven times

and served short stints of incarceration. His criminal history category was IV, indicating a substantial record of convictions, at least two of which were based on confessions. Gancarz did not resort to any of the oppressive tactics that might make a confession involuntary. If attributable to Wilderness's miscalculation about the effect of a lame attempt at mitigating the seriousness of his acts, the confession was nonetheless admissible. See *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Rice v. Cooper*, 148 F.3d 747 (7th Cir.1998); *Johnson v. Trigg*, 28 F.3d 639 (7th Cir.1994).

■ Indiana would not have permitted Wilderness's confession to be used in a state prosecution. When Wilderness spoke with Gancarz, IC § 31-6-7-3(b) provided that a person under the age of 18 could waive a constitutional right in a criminal investigation or proceeding only if the waiver was "made in the presence of his custodial parent, guardian, custodian, guardian ad litem, or attorney, and if the waiver [was] made knowingly and voluntarily." (That statute has since been replaced by IC § 31-32-5-1, which limits waivers to those made *by* parents or counsel with the child's consent.) But federal rather than state law determines the admissibility of evidence in federal prosecutions, and the voluntariness of a confession depends on public officials' compliance with constitutional norms, not on any rule of state law. We have held repeatedly that evidence may be used whether or not its acquisition violated state law. See *United States v. Delaporte*, 42 F.3d 1118, 1120 (7th Cir.1994); *United States v. Goodapple*, 958 F.2d 1402, 1410 n. 3 (7th Cir.1992); *United States v. Singer*, 943 F.2d 758, 761 (7th Cir.1991); *United States v. Mealy*, 851 F.2d 890, 907 (7th Cir.1988); *United States v. Infelice*, 506 F.2d 1358, 1365 (7th Cir.1974); *United States v. Escobedo*, 430 F.2d 603, 607 (7th Cir.1970). Federal law does not condition the use of a juvenile's confession on the presence of a parent or lawyer. See *Stone v. Farley*, 86 F.3d 712 (7th Cir.1996); *United States ex rel. Riley v. Franzen*, 653 F.2d 1153, 1160 (7th Cir.1981). Cf. *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)

(federal law does not require presence of a juvenile's probation officer, either).

Although federal courts do not enforce state rules for evidence gathering, a state law may identify factors that affect a confession's voluntariness and reliability and therefore matter under federal law. It is easier to overbear the will of a juvenile than of a parent or attorney, so in marginal cases—when it appears the officer or agent has attempted to take advantage of the suspect's youth or mental shortcomings—lack of parental or legal advice could tip the balance against admission. Moreover, even if the judge determines that a confession is voluntary, a defendant is entitled to urge the jury to discount the confession in light of circumstances, such as the absence of parental advice, that may diminish its reliability. 18 U.S.C. § 3501(a); *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). Wilderness therefore was free to show at trial that the police turned away his mother when she tried to speak with him. (His mother testified at the suppression hearing that the police denied having her son in custody when she appeared at the stationhouse. The district judge did not determine whether this recollection is correct.) But on this appeal Wilderness does not contend that agent Gancarz took advantage of a known weakness in his ability to bear up under interrogation (recall that Wilderness is a veteran of the criminal justice system and that Gancarz resumed the questioning only at his request) and does not contend that relevant information was kept from the jury; he insists that the judge was obliged to suppress the confession simply because Gancarz did not follow Indiana law. That contention is unavailing, so the judgment is

AFFIRMED.