**Adiel CUEVAS, Petitioner–Appellant,**

v.

**James A. CHRANS, Respondent–Appellee.**

No. 99–4107.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 13, 2000.

Decided Feb. 14, 2001.

Before COFFEY, EASTERBROOK, MANION, Circuit Judges.

ORDER

Gang member Adiel Cuevas was 15 when he shot and killed a Montgomery

Wards security guard. The police apprehended Cuevas, who confessed approximately six hours after the killing. Following a bench trial, Cuevas was convicted of first degree murder and sentenced to 60 years' imprisonment. He unsuccessfully pursued various state-court remedies, and then filed a federal habeas corpus petition raising four claims, among them that trial counsel was ineffective in failing to seek suppression of his post-arrest confession and in not calling at trial another gang member who was with him during the shooting. The district court denied relief on all claims, but issued a certificate of appealability limited to the question whether trial counsel rendered ineffective assistance by failing to seek suppression of Cuevas' confession.

On appeal, Cuevas argues not only the merits of his claim that trial counsel should have moved to suppress the confession, but also renews his request for a CA on the remaining issues. For the reasons that follow, we affirm the district court judgment and deny Cuevas' motion to expand the CA.

## I. Background[1]

In the late afternoon of November 25, 1991, Cuevas, Jose Barrera, and another member of the "Two Sixers" street gang encountered three members of a rival gang, the "Latin Counts". The Two Sixers chased the Latin Counts into a Montgomery Wards department store. An altercation ensued, during which Cuevas revealed to the Latin Counts that he had a .25 caliber handgun in the waistband of his pants. In response, the Latin Counts began shouting that he had a gun, and

someone called security. Two security guards—David Kolodziejezak, the victim, and Algis Kivenas—responded to the call. Both guards were unarmed and wore street clothes, but displayed security badges on chains around their necks. Kolodziejezak gave chase as Cuevas fled the store. When Kolodziejezak was almost in reach, Cuevas turned and fired three times. All three shots hit Kolodziejezak, killing him.

After Detective Thomas Ptak arrested Cuevas at his home, he informed Cuevas' mother, Rosario Rivera, that Cuevas was the suspect in a shooting and that she could accompany them to the police station. Rivera declined because she did not feel well and had other children to care for. Ptak administered *Miranda* warnings at the time of the arrest; a few hours later Cuevas admitted shooting Kolodziejezak and gave a formal confession. His confession was consistent with the facts related above, but Cuevas added that he tried to leave the store because he knew security was nearing and he didn't want to be caught with the gun. Cuevas also explained that he knew his gun was loaded with five bullets, that he heard Kolodziejezak shout for him to stop, and that he "did not see [Kolodziejezak] have any type of weapon on him." *Cuevas I,* 221 Ill.Dec. 173, 674 N.E.2d 1278.

Cuevas' confession was read at his bench trial. After the state rested Cuevas testified that he thought Kolodziejezak was a member of the Latin Counts, that he never saw Kolodziejezak's badge, and that he heard Kolodziejezak yell, "Stop, I have a gun." Cuevas also told the court that he

---

1. The facts of this case are taken from the Illinois appellate court opinions affirming Cuevas' conviction on direct appeal, *People v. Cuevas,* 259 Ill.App.3d 1039, 221 Ill.Dec. 173, 674 N.E.2d 1278 (1993) (unpublished order) (*"Cuevas I"*), and the denial of his post-conviction petition, *People v. Cuevas,* 294 Ill. App.3d 1096, 242 Ill.Dec. 571, 721 N.E.2d 850 (1998) (*"Cuevas II"*). See 28 U.S.C. § 2254(e)(1) (in habeas corpus proceedings, "a determination of factual issues made by a state court shall be presumed correct").

repeatedly asked to speak to his mother once he arrived at the police station and that he did not have a lawyer present when he gave his confession. Finally, he complained that no one explained the legal implications of a written confession.

On the other hand, Assistant State's Attorney Kevin Noonan testified that, when he obtained Cuevas' written confession, he explained that he worked with the police and did not represent Cuevas. He then readministered the *Miranda* warnings and heard Cuevas say that he understood the warnings before signing a waiver. Noonan testified that he told Cuevas he was being charged with first degree murder as an adult, and that Cuevas again said he understood. Finally, Noonan testified that, after Cuevas' confession had been transcribed, he asked Cuevas to read the entire document (including the *Miranda* warnings) and make any changes he wanted to make. Noonan and Cuevas then read the confession aloud together, made a few changes, initialed those changes, and signed the document.

The state also introduced testimony from two other security guards. Kivenas, who responded to the security call with Kolodziejezak, and Michael Gercone, who was patrolling the store parking lot that afternoon. Both men testified that Kolodziejezak was less than an arm's length away from Cuevas when Cuevas shot him. Both made in-court identifications of Cuevas as the shooter, and both said that Kolodziejezak's badge was visible. The two security officers also testified that Kolodziejezak said "no" immediately before being shot and that he had his empty hands in the air when they heard the first shot. Additionally, Gercone testified that he identified Cuevas in a lineup several hours after the shooting.

The trial court rejected Cuevas' self-defense argument and found him guilty of first degree murder. After exhausting his state court remedies, Cuevas filed his § 2254 petition on October 22, 1999, arguing that (1) trial counsel was ineffective in not moving to suppress his confession and in not calling Jose Barrera as a corroborating witness at trial, (2) his confession was obtained in violation of *Miranda*, (3) the state failed to prove him guilty of first degree, as opposed to second degree, murder, and (4) his sentence is cruel and unusual. The district court denied relief, *Cuevas v. Chrans*, No. 99 C 4063, 1999 WL 977078 (N.D.Ill. Oct.22, 1999) (unpublished order) (*"Cuevas III"*), concluding that Cuevas had procedurally defaulted all but his ineffective assistance claim. Specifically, the court held that Cuevas never presented his *Miranda* claim to the state courts and, although he presented his evidentiary and sentencing claims on direct appeal, did not petition for leave to appeal the decision in *Cuevas I* to the state supreme court. As to the confession aspect of Cuevas' ineffective-assistance claim, the district court rejected what it saw as a suggestion by the post-conviction appellate court that decisions not to seek suppression are generally grounded in strategy and thus immune from collateral attack. To the contrary, the district court reasoned, trial counsel was deficient in not seeking suppression because the confession "should have been suppressed" if it was obtained in the manner Cuevas described. Still, the court ultimately concluded that the post-conviction appellate court had reasonably applied *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in concluding that Cuevas could not show prejudice resulting from counsel's failure to seek suppression of his confession. Finally, as to the aspect of the ineffective-assistance claim involving witness Barrera, the district court concluded that the state court reasonably denied relief because Cuevas failed to articulate

what Barrera would have said at trial or how his testimony would have advanced Cuevas' defense. The district court then issued a CA on the ineffective-assistance claim as it relates to Cuevas' confession, but denied a CA on Cuevas' remaining claims.

## II. Analysis

■ A writ of habeas corpus cannot be granted unless a state court's adjudication of a claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), or that was "based on a unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

■ Under *Strickland* a petitioner alleging ineffective assistance must demonstrate both deficient performance and prejudice. 466 U.S. at 687, 104 S.Ct. 2052. At issue with respect to the confession is whether Cuevas' attorney should have moved to suppress it as obtained in violation of the Fifth Amendment right to counsel. Cuevas, then, was required to demonstrate both that a suppression motion would have succeeded and that, having succeeded, there exists a reasonable probability that the outcome of his trial would have been different. *See Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). The state post-conviction appellate court correctly identified these governing standards. *Cuevas II,* 242 Ill.Dec. 571, 721 N.E.2d 850.

■ As an initial matter, Cuevas asserts that the state is bound by the district court's conclusion that a motion to suppress would have succeeded if the facts alleged by Cuevas in his § 2254 petition are true. Cuevas says this court cannot

review the question because the state never filed a cross-appeal. Cuevas of course is mistaken: it was neither necessary nor proper for the state to file a cross-appeal to defend a judgment entirely in its favor. *E.g., Warner/Elektra/Atlantic Corp. v. County of DuPage,* 991 F.2d 1280, 1282 (7th Cir.1993).

■ With respect to whether trial counsel's performance was deficient, Cuevas contends that his confession would have been suppressed under the standard announced in *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). In *Fare,* the Supreme Court held that a totality-of-the-circumstances approach to determining the validity of a *Miranda* waiver is adequate to test the voluntariness of a juvenile's custodial statement. *Id.* at 725, 99 S.Ct. 2560; *see also United States v. Wilderness,* 160 F.3d 1173, 1175 (7th Cir.1998) ("Federal law does not condition the use of a juvenile's confession on the presence of a parent or lawyer."); *Stone v. Farley,* 86 F.3d 712, 717 (7th Cir.1996) ("[N]either federal statutory nor constitutional law requires that a juvenile's parents be notified prior to obtaining a confession."). The Court identified several factors relevant to such a determination with respect to a juvenile suspect: "evaluation of the juvenile's age, experience, education, background, and intelligence, and ... whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare,* 442 U.S. at 725, 99 S.Ct. 2560.

Since *Fare* was decided, this court has expanded the list of relevant factors. For example, in *U.S. ex rel. Riley v. Franzen,* 653 F.2d 1153, 1161 (7th Cir.1981), this court held that "a request which manifests the juvenile's desire to see his parent in order to obtain an attorney must be treat-

ed differently from a request ... in which there is no such manifestation." Ultimately, the focus of the inquiry is whether the police engaged in abusive practices, not whether the juvenile offender wisely waived his rights to remain silent and to an attorney. *Rice v. Cooper,* 148 F.3d 747, 750–51 (7th Cir.1998) (*Miranda* waiver by mentally retarded, 16–year–old defendant was valid where police reasonably believed the defendant understood the rights he was waiving).

The post-conviction appellate court's application of these principles in its evaluation of the first *Strickland* prong was cursory, but not unreasonable. The state court reasoned that the "absence of a parent during questioning of a juvenile is only one factor to be considered ... under the totality of the circumstances," and found "no other facts showing involuntariness." *Cuevas II,* 242 Ill.Dec. 571, 721 N.E.2d 850. Most important, Cuevas never explicitly invoked his Fifth Amendment rights to remain silent or have counsel present during the interrogation. Rather, Cuevas alleges that he repeatedly asked to see his mother during the interrogation. In contrast, as the state-court opinions conclusively establish, Cuevas at least twice told Noonan that he understood his *Miranda* rights and wished to waive them. His later assertion in the state post-conviction proceeding that he "did not understand what was going on" is simply insufficient to show that the officers did not reasonably believe his assertions to the contrary made during the interrogation. Thus, Cuevas has not demonstrated that the post-conviction appellate court unreasonably applied the *Strickland* performance prong in determining that counsel was not deficient in failing to seek suppression.

In sum, Cuevas does not make a convincing argument that the post-conviction appellate court's application of *Strickland*

was unreasonable. Accordingly, we affirm the district court's resolution of Cuevas' ineffective-assistance claim as it relates to his confession.

Finally, Cuevas does not make a substantial showing of the denial of a constitutional right with respect to his remaining claims. Therefore, we deny his motion to expand the certificate of appealability.

### III. Conclusion

We AFFIRM the district court judgment and DENY Cuevas' motion to expand the certificate of appealability.