In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3675

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CALVIN BRUCE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07 CR 57—**John C. Shabaz**, *Judge.*

_____

ARGUED SEPTEMBER 19, 2008—DECIDED DECEMBER 18, 2008

_____

Before POSNER, RIPPLE and EVANS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Calvin Bruce was charged by indictment with one count of possession with intent to distribute fifty grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1). He entered a plea of not guilty, but was convicted after a jury trial. The district court sentenced him to 360 months' imprisonment followed by 10 years of supervised release. Mr. Bruce

appeals both his conviction and his sentence. For the reasons set forth in this opinion, we affirm Mr. Bruce's conviction and remand this case for resentencing in light of the Supreme Court's decision in *Kimbrough v. United States*, ___ U.S. ____, 128 S. Ct. 558 (2007).

# I

## BACKGROUND

### A. Facts

On the afternoon of March 28, 2007, Calvin Bruce was a passenger in a car that was stopped by officers of the Dane County (Wisconsin) Narcotics and Gang Task Force. During the stop, the police discovered an outstanding warrant for Mr. Bruce's arrest and took him into custody. Mr. Bruce used his cell phone to call his girlfriend, Endia Matthews, who drove to the scene of the traffic stop. After Matthews arrived, the police learned that she was on probation and had driven to the scene on a revoked driver's license. The police did not arrest her, but asked for consent to search her house. Matthews consented. The police obtained the keys to the house from Mr. Bruce, who was then taken to a police station for questioning.

Madison Police Detective Dorothy Rietzler, Officer Denise Markham and Officer Jason Baumgart went to Matthews' house to conduct the search and to interview Matthews. At the house, they found $2,580 in cash in a jacket belonging to Mr. Bruce. They also found a bag containing crack cocaine and pepper in the engine compartment of a van parked in the garage. Other drug

paraphernalia were found throughout the house. Matthews denied any knowledge about the drugs or the money.

After completing the search, the police officers went to the station to interview Mr. Bruce. Detective Rietzler led the interview, portions of which also were attended by Officers Markham and Baumgart. Before the interview began, Detective Rietzler turned on an audio recorder. Mr. Bruce initially denied any knowledge about the drugs and the money. Eventually, however, he admitted that the money belonged to him and also admitted that there were "about two ounces" of crack in the van. R.75 at 26. Detective Rietzler offered Mr. Bruce "a chance to help [him]self" by working with police to incriminate "the big fish"—that is, other drug dealers who sold larger amounts of drugs. R.75 at 20, 21. Mr. Bruce agreed to assist the police and began by telling them the name and location of one of the dealers from whom he bought drugs. Detective Rietzler then turned off the audio recorder but continued the interview for twenty more minutes.

Mr. Bruce was released from custody after the interview. He ultimately failed to make good on his promise of cooperation, however, and, in April 2007, he was indicted in the United States District Court for the Western District of Wisconsin on one count of possession with intent to distribute 50 grams or more of a mixture or substance containing cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1).

**B. Trial**

Mr. Bruce's jury trial was held in August 2007. At a pre-trial hearing, Mr. Bruce alleged that Detective Rietzler had violated Wisconsin law by continuing to interrogate him after turning off the audio recorder. Wisconsin Statute § 968.073 provides, in relevant part: "It is the policy of this state to make an audio or audio and visual recording of a custodial interrogation of a person suspected of committing a felony unless . . . good cause is shown." Wis. Stat. § 968.073(2). Mr. Bruce requested a jury instruction stating that the law requires recording of interrogations by police and instructing the jury that "unrecorded oral statements made by a defendant out of court to a law enforcement officer should be viewed with caution." R.60 at 2. The district court declined to give the proposed instruction because it agreed with the prosecution that any violation of state law by the police was irrelevant to Mr. Bruce's guilt or innocence under federal law.

At trial, the Government presented the recovered money, the crack cocaine found in the van, the drug paraphernalia found in the house and garage, and mail addressed to Mr. Bruce at Matthews' address. Detective Rietzler, Officer Markham and Officer Baumgart testified about the recorded part of the interview, portions of which were played for the jury. Detective Rietzler and Officer Markham testified that, after the recorder was turned off, Mr. Bruce continued to be relaxed and cooperative. They also testified that Mr. Bruce dated and initialed a photo of another dealer from whom he had purchased crack in the past. This photo was admitted as evidence.

Mr. Bruce's counsel was permitted to cross-examine the officers about the content of the interview and the circumstances surrounding it, including the fact that Detective Rietzler had stopped the recording. His counsel was not, however, allowed to mention the Wisconsin statute regarding the recording of custodial interrogations.

At the end of the trial, the court gave a model jury instruction instead of Mr. Bruce's proposed instruction on the recording of interrogations. The jury convicted Mr. Bruce on the sole count of the indictment.

## C. Sentencing

Mr. Bruce was sentenced on October 31, 2007. The court determined that Mr. Bruce's past criminal record qualified him as a career offender under Section 4B1.1 of the United States Sentencing Guidelines. Accordingly, the court calculated his base offense level under both the drug quantity table Guideline, § 2D1.1(c), and the career offender Guideline, § 4B1.1(b). The court found that Mr. Bruce's offense, including relevant conduct, involved 3.28 kilograms of crack cocaine, resulting in a base offense level of 38 under Section 2D1.1(c). Mr. Bruce's base offense level under Section 4B1.1(b) was 37 because the maximum statutory sentence for his offense was life in prison. Because the drug quantity table's offense level of 38 was the higher of the two, the court used this latter offense level to determine Mr. Bruce's sentencing range under the Guidelines. The court also determined that Mr. Bruce's prior convictions placed him in Criminal History Category

VI. The Guidelines sentencing range for level 38 in Category VI is 360 months to life.

Mr. Bruce's counsel pointed out to the court that amended Guidelines were expected to take effect the next day (November 1, 2007) that would reduce the offense level for someone in Mr. Bruce's position from 38 to 36. Counsel acknowledged, however, that this reduction would have no effect on Mr. Bruce's sentencing range because he then would be sentenced at the career offender offense level of 37, which also prescribes a range of 360 months to life for offenders in Criminal History Category VI. The court sentenced Mr. Bruce to 360 months' imprisonment, to be followed by 10 years of supervised release.

The next day, the 2007 Sentencing Guidelines took effect. The new Guidelines reduced the Section 2D1.1 offense level by two levels for all crack offenses. The United States Sentencing Commission subsequently decided that this reduction should be retroactive.

Mr. Bruce timely appealed his conviction and sentence.

## II

## DISCUSSION

Mr. Bruce submits that the district court's exclusion of any mention of the Wisconsin recording statute violated his right to a fair trial. He also contends that the Supreme Court's decision in *Kimbrough v. United States*, ___ U.S. ____, 128 S. Ct. 558 (2007), entitles him to a remand for resentencing. We consider these arguments in turn.

## A. Jury Instruction

Mr. Bruce's first basis for appeal is that he was deprived of the right to a fair trial by the district court's refusal to give his proposed jury instruction, which stated that the police violated Wisconsin law by failing to record the entirety of his interrogation.[1] The district court instead gave a model jury instruction that directed the jurors to consider all of the evidence when weighing Mr. Bruce's

---

[1]   The requested instruction read as follows:

> The law requires law enforcement officers, when questioning a person who may be charged with a crime, to record all oral statements made by that person. The failure of a law enforcement officer to follow this law results in less than a full and accurate record of the actual statement made by the defendant, and denies a defendant the ability to present recorded evidence that may be favorable to his or her case.

> You have heard evidence that the defendant made a statement to law enforcement officers after they stopped the recording device. You are the exclusive judge as to whether the defendant made the statement, and as to what was actually said. If you find that the defendant did not make such a statement after the recording device was stopped, you must disregard the evidence of the statement and not consider it for any purpose.

> If you find that the defendant did make a statement after the recording device was stopped, you must view the statement as reported with caution, because unrecorded oral statements made by a defendant out of court to a law enforcement officer should be viewed with caution.

R.60 at 2.

statements to the police.[2] Mr. Bruce submits that the court's refusal to give his instruction hindered his ability to present his theory of defense, which was lack of proof. We review de novo a district court's decision not to give a requested jury instruction. *United States v. Prude*, 489 F.3d 873, 882 (7th Cir. 2007).

Mr. Bruce contends that he was entitled to have his proposed instruction read to the jury because it satisfied the four requirements that we have set forth for instructions on a defendant's theory of defense. We have said:

> A defendant is entitled to a jury instruction as to his or her particular theory of defense provided: (1) the instruction represents an accurate statement of the law; (2) the instruction reflects a theory that is supported by the evidence; (3) the instruction reflects a theory which is not already part of the charge; and (4) the failure to include the instruction would deny the appellant a fair trial.

*United States v. Eberhart*, 467 F.3d 659, 666 (7th Cir. 2006) (quoting *United States v. Buchmeier*, 255 F.3d 415, 426 (7th

---

[2]  The court gave the following instruction:

> You have received evidence of statements made by the defendant to Detective Dorothy Rietzler and Denise Markham. You must decide what weight, if any, you believe the statements deserve. In making this decision you should consider all matters in evidence having to do with the statements and the circumstances under which the statements have been made.

R.89 at 156 (quoting Pattern Criminal Federal Jury Instructions for the Seventh Circuit § 3.02).

Cir. 2001)). Mr. Bruce submits that his proposed instruction satisfied each of these requirements and that therefore it was error for the court to refuse to give it.

Mr. Bruce's theory of defense was that the Government could not prove its case beyond a reasonable doubt. We agree that he was entitled to have the jury instructed on this theory, and in fact the jury was so instructed. Specifically, the court instructed the jury that Mr. Bruce was entitled to a presumption of innocence that "is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty as charged." R.89 at 159. Regarding the reliability of Mr. Bruce's unrecorded statements—the subject of Mr. Bruce's proposed instruction—the jury was instructed that it must decide what weight, if any, to give them. The jury clearly was instructed that the Government had the burden of proof and that it must acquit Mr. Bruce if the Government failed to present enough proof to meet its burden.

Mr. Bruce was not, however, entitled to an instruction of his own choosing. "We defer to the substantial discretion of the district court for the specific wording of the instructions, and in rejecting a proposed instruction, so long as the essential points are covered by the instructions given." *United States v. Scott*, 19 F.3d 1238, 1245 (7th Cir. 1994) (internal quotations omitted). Mr. Bruce argues, in essence, that the Wisconsin state law concerning the recording of interrogations was an "essential point" that was not covered by the instruction the court gave. We disagree. Assuming that Detective Rietzler violated state law by

turning off the recorder, that violation was irrelevant in this federal case. Federal law, not state law, governs the admissibility of evidence in federal criminal trials, *see, e.g., United States v. Wilderness*, 160 F.3d 1173, 1175 (7th Cir. 1998), and there is no federal requirement that criminal interrogations be recorded. Mr. Bruce nevertheless submits that the purported violation was relevant here because it casts doubt on the reliability of his unrecorded statements. However, any relevance the absence of a recording might have stems from the fact that Detective Rietzler chose to stop recording the interview—of which the jury was made aware—not from the presence or absence of a state law governing recordings.

Mr. Bruce points to our decision in *United States v. Wilderness*, 160 F.3d 1173 (7th Cir. 1998), in which we wrote that "[a]lthough federal courts do not enforce state rules for evidence gathering, a state law may identify factors that affect a confession's voluntariness and reliability and therefore matter under federal law." *Id.* at 1176. However, *Wilderness* does not bear on the circumstances before us today. The issue in that case was the admissibility of the defendant's confession at his federal carjacking trial. The defendant was under the age of eighteen when he confessed. Under Indiana state law, his confession would have been inadmissible because it was made outside the presence of a parent or an attorney. Federal law imposes no such limitation, however, and therefore we affirmed the admission of the confession in Wilderness' federal criminal trial. As Mr. Bruce points out, we did note that state evidence laws may have some relevance in the context of confessions, and we explained how the state law might be

relevant in Wilderness' case: "It is easier to overbear the will of a juvenile than of a parent or attorney, so in marginal cases—when it appears the officer or agent has attempted to take advantage of the suspect's youth or mental shortcomings—lack of parental or legal advice could tip the balance against admission." *Id.* In other words, state law might indicate factors to which a federal *judge* should pay respectful attention when deciding whether a confession is admissible. But *Wilderness* does not say, or even imply, that federal *juries* must be allowed to consider the existence of a state law in determining how much weight to give to a confession that has been admitted.

**B. Cross-Examination**

Mr. Bruce also submits that the district court erred in preventing him from mentioning the state law during his cross-examination of Detective Rietzler. We review a trial court's limitation of cross-examination for abuse of discretion. *United States v. Neely*, 980 F.2d 1074, 1080 (7th Cir. 1992). As we have explained, the state law was irrelevant in this federal criminal case. Defendants are not entitled to cross-examine witnesses on irrelevant matters. *United States v. Jackson*, 540 F.3d 578, 591 (7th Cir. 2008) ("A district judge has wide discretion to impose reasonable limits on cross-examination, and may do so based on concerns about, *inter alia*, prejudice, confusion of the issues, or questioning that is only marginally relevant." (citation omitted)). Notably, Mr. Bruce was free to—and did—fully and freely cross-examine Detective Rietzler

about her decision to turn off the recorder, and to argue to the jury that this decision rendered Mr. Bruce's confession unreliable. The district court did not abuse its discretion by preventing him from also mentioning the state law.[3]

---

[3] We also note that it is far from clear whether Detective Rietzler actually violated the law in the first place. The language of the statute describes recording as a "policy" rather than a mandate. Wis. Stat. § 968.073(2). Arguably the Wisconsin legislature knows how to require recording of interrogations when it wants to, and it did not do so here. *See, e.g.,* Wis. Stat. § 938.195(2)(a) ("A law enforcement agency *shall* make an audio or audio and visual recording of any custodial interrogation of a juvenile that is conducted at a place of detention . . . ." (emphasis added)). Wisconsin's own courts appear to be unclear on this question. *Compare State v. Townsend*, 746 N.W.2d 493, 494 (Wis. Ct. App. 2008) ("Wisconsin law . . . presently encourages electronic recording of custodial interviews.") *with State v. Stefan*, 756 N.W.2d 809 (Wis. Ct. App. 2008) ([T]he legislature enacted legislation mandating the recording of custodial interrogations."). But even if the statute does impose a general recording requirement, the statute also includes six specific circumstances to which the policy does not apply, *see* Wis. Stat. §§ 972.115(2)(a)(1)-(6), as well as a general exception for "good cause." Mr. Bruce's position would require the judge either to hold a mini-trial on the alleged state law violation, or to allow the parties to submit sufficient evidence to allow the jury to weigh whether there was such a violation. We do not believe that the court was obligated to go so far afield from the central issues in the case. Accordingly, we hold that the district court's rejection of Mr. Bruce's proposed instruction was proper.

## C. Sentencing

On December 10, 2007—roughly a month after Mr. Bruce's sentencing—the Supreme Court of the United States announced its decision in *Kimbrough v. United States*, ___ U.S. ____, 128 S. Ct. 558 (2007). In *Kimbrough*, the Court held that a district court may sentence crack offenders to a term below the Guidelines range if it believes that the disparity between the Guidelines sentence for a given amount of crack and the sentence for an equivalent amount of powder cocaine (often referred to as the "100:1 ratio" or the "100:1 disparity") leads to sentences for crack offenders that fail to "accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a)[4]." *Id.* at 565. Prior to *Kimbrough*, we had held that district courts could not depart from the Guidelines based on a disagreement with the 100:1 disparity. *See United States v. Miller*, 450 F.3d 270, 273-76 (7th Cir. 2006), *abrogated by Kimbrough*, 128 S. Ct. at 574-75. Thus, the

---

[4]  18 U.S.C. § 3553(a) directs the courts to impose sentences "sufficient, but no longer than necessary":

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.*

district court could not have known when it sentenced Mr. Bruce that it could impose a below-guideline sentence if it disagreed with the application of the 100:1 disparity in his case. Mr. Bruce submits that his case should be remanded for resentencing in light of *Kimbrough*.

The central question in our review of Mr. Bruce's sentence is whether he adequately raised the crack-powder disparity issue with the trial court at sentencing. If he did, then our review is for abuse of discretion, and we have held in such cases that the defendant is entitled to a full remand for resentencing. *See United States v. Clanton*, 538 F.3d 652, 659 (7th Cir. 2008). If Mr. Bruce did not adequately raise the issue, however, then our review is for plain error. Under plain error review, Mr. Bruce would be entitled only to a limited remand for purposes of determining whether the district court would be inclined to resentence him in light of *Kimbrough*. *See United States v. Taylor*, 520 F.3d 746 (7th Cir. 2008).

Upon examination of the record, we conclude that Mr. Bruce raised the crack issue sufficiently to merit a full remand and resentencing. It is true that Mr. Bruce did not cite specifically the 100:1 disparity as a basis for the trial court to give him a shorter sentence. To do so, however, would have been fruitless under the law of the Seventh Circuit at the time. Recognizing this, we have held in a similar case that explicit mention of the disparity is not a prerequisite to resentencing. *See United States v. Padilla*, 520 F.3d 766, 774 (7th Cir. 2008). The defendant in *Padilla*, like Mr. Bruce, was sentenced under Section 2D1.1's drug quantity tables for a crack offense. Padilla disputed

whether the drugs he possessed qualified as crack, but he did not ask the court to consider the appropriateness of the 100:1 disparity in determining his sentence. Noting that he "[would not] have stood on sound legal footing in so doing prior to *Kimbrough*," we held that this omission was not fatal to his request for resentencing:

> Padilla did contest before the district court and again on appeal whether the drugs in question were crack. We can presume that Padilla's primary purpose in disputing the drug type was to avoid the harsh effects of the crack sentencing disparity, since no other logical inference exists. In so doing, Padilla preserved the issue, *however obliquely*, of whether the district court could consider the 100:1 sentencing disparity in sentencing.

*Id.* (emphasis added). The same approach is appropriate here. Although Mr. Bruce's counsel did not specifically mention the crack-powder disparity at the sentencing hearing, he did invite the court's attention to the planned change in the 2007 Guidelines that reduced crack sentences by two levels. Counsel told the court: "[I]t makes no difference to the sentencing range but I do want to preserve the crack issue simply to allow further review if that becomes necessary." R.102 at 2-3. As the Supreme Court recognized in *Kimbrough*, the 2007 amendment was a part of the Sentencing Commission's ongoing efforts to "ameliorat[e]" the 100:1 disparity by bringing crack sentences closer to sentences for powder cocaine. 128 S. Ct. at 569. In light of this, it is clear to us that Mr. Bruce's purpose in mentioning the crack sentencing issue was "to

avoid the harsh effects of the crack sentence disparity,"
*Padilla*, 520 F.3d at 774. Consequently, we hold that he
adequately preserved the issue before the district court and
is now entitled to a full remand for resentencing.[5]

The Government submits that a remand for resentencing
is inappropriate here. The 2007 amendment to the Guide-
lines decreased the offense level for Mr. Bruce's crime
from level 38 to level 36. The Government argues that,
because the Commission has declared the amendment
retroactive, Mr. Bruce's new sentence would be based on
the career offender Guideline level of 37, which would
then be higher than the offense level prescribed by the
drug quantity table. For an offender in Mr. Bruce's crimi-
nal history category, the Guidelines range for offense level
37 is the same as the range for level 38: 360 months to life.
The Government contends that Mr. Bruce can derive no
benefit from a remand because his offense level on
resentencing would be the same. The Government also
submits that he would not be eligible for a departure
based on the 100:1 disparity because we have held that
*Kimbrough* does not apply to sentences imposed under the

---

[5] The Government argues that our decision in *United States v.
Thomas*, 520 F.3d 729, 737 (7th Cir. 2007), establishes that Mr.
Bruce waived his right to argue for a *Kimbrough* remand by
failing to make that argument before the district court. In
*Thomas*, however, we declined to consider a *Kimbrough* remand
because the defendant never asked for one, either before the trial
court or on appeal. Because Mr. Bruce explicitly asked for a
*Kimbrough* remand in his appellate brief, *Thomas* is inapposite
here.

career offender Guideline, U.S.S.G. § 4B1.1(b). *See United States v. Harris*, 536 F.3d 798, 812-13 (7th Cir. 2008); *Clanton*, 538 F.3d at 660.

The Government's premise that Mr. Bruce necessarily will be resentenced under the career offender Guideline is not self-evident. When Mr. Bruce is resentenced, his offense level and Guidelines range will be determined by the Guidelines in effect at the time of his original sentencing. 18 U.S.C. § 3742(g)(1); *United States v. Tanner*, 544 F.3d 793, 797 (7th Cir. 2008). While it is true that the Sentencing Commission made the 2007 amendments retroactive, the decision to apply the retroactivity in any individual case lies within the sound discretion of the district court. 18 U.S.C. § 3582(c)(2); *United States v. Lloyd*, 398 F.3d 978, 979 (7th Cir. 2005) (Section 3582(c)(2) "permits" the district court to reduce a defendant's sentence "when the Sentencing Commission has reduced the applicable Guidelines range and made the change retroactive."). We have no way of knowing whether the district court will decide to apply the 2007 amendments retroactively when it resentences Mr. Bruce. It is the province of the district court to determine, in the first instance, the proper Guidelines range and the appropriate sentence for Mr. Bruce. Our task at this stage is merely to decide whether Mr. Bruce's original sentence was imposed erroneously. We conclude that it was.

### Conclusion

For the foregoing reasons, Mr. Bruce's conviction is affirmed, but his sentence is vacated and his case is remanded to the district court for resentencing.

AFFIRMED in part, VACATED and REMANDED in part