NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 17, 2013
Decided December 23, 2013

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1493

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States Court for the Southern District of Illinois. |
| *v.* | No. 12-CR-30090-MJR |
| ANTHONY M. TAYLOR, *Defendant-Appellant.* | Michael J. Reagan, *Judge*. |

**O R D E R**

Anthony Taylor appeals the denial of his motion to suppress the cocaine that police found in his hotel room. Because the district court did not clearly err in crediting the police officers' testimony that Taylor validly consented to a search, we affirm Taylor's drug conviction.

After a warrantless search of Taylor's room at the First Western Inn in Fairmont City, Illinois, revealed crack cocaine, Taylor was arrested and charged with possessing and intending to distribute the drug. *See* 21 U.S.C. § 841(a)(1). Taylor moved to suppress the crack cocaine, arguing that he did not consent to the search. The district court held

an evidentiary hearing at which the arresting officers, Mel Straub and Shaun Benyr, maintained that Taylor voluntarily consented to the search. Taylor did not testify but called two witnesses: his girlfriend, Brittany Lavington, who was in the hotel room with him, and Byron Blackwell, a guest in a neighboring room.

The following facts were not disputed. While on a routine weekly "business check" at the inn one evening, Officers Straub and Benyr walked the halls looking for prostitution or drug activity and smelled marijuana outside one of the guest rooms. Taylor answered the door when Straub knocked. Straub asked if he could search the room, but Taylor initially refused. Lavington soon emerged from the room with a glass pipe, and she and Taylor explained that the marijuana had been "all smoked up." Benyr then told Taylor that he could refuse to consent to a search of the room, but the officers would seek a warrant based on the smell of marijuana, the pipe, and Taylor's and Lavington's admissions that they had smoked marijuana.

The parties disputed how Taylor responded to Officer Benyr's plan to get a search warrant. According to the officers, Taylor assured them that a warrant was unnecessary and that the officers could "go ahead and look." On the other hand, Lavington testified that the officers asked to search the room "like five" times over the course of about 30 minutes, and she never heard Taylor consent, nor did she consent herself. But Lavington acknowledged that she left the room for a few minutes to buy cigarettes at a nearby gas station. Blackwell testified that he overheard part of the officers' conversation with Taylor from his neighboring room. He asserted that the officers "[d]idn't seem like they were taking no for an answer" despite Taylor's repeated refusals to allow the search, and that he never heard anyone invite the officers in during the 20-to-30-minute exchange. He acknowledged, however, that he did not hear the full conversation because he "panicked" (he himself earlier had smoked marijuana and worried that the police would discover him) and was getting dressed to leave.

Officer Straub searched the room for a few minutes. He took photographs and found a razor blade with white residue, a box of baking soda, and three "rocks" of a white substance. The rocks were found in a front pocket of a black coat hanging on a rack next to the sink. When confronted with the rocks, Taylor blurted out "shit, that's cocaine," and admitted it was his. Taylor's arrest and drug charges followed.

The district court denied Taylor's motion to suppress, finding that Taylor consented to the search. The court reasoned that "the bulk" of all witnesses' testimony

could be reconciled: It found that Taylor initially and "repeatedly" refused to consent. But it also found that after the police correctly warned him that he could refuse to consent but that they would seek a warrant, Taylor agreed to the search. Lavington and Blackwell simply must have missed Taylor's consent, the court explained, as they both conceded that they did not hear the entire exchange (Lavington went to the gas station; Blackwell was panicking and dressing looking for an opportunity to scram from the hotel room with his companion). The court also thought if Lavington witnessed Taylor's consent, she lied about it to protect her boyfriend. The court explained whom it found most credible where testimony conflicted: "The undersigned Judge finds the officers' testimony credible and consistent. They engaged in no furtive conduct on the witness stand and did not overstate or embellish their account of the events. To the extent that their testimony directly contradicts that of the defense witnesses on the issue of Taylor's oral consent, the Court opts to believe the officers."

Taylor conditionally pleaded guilty, reserving the right to appeal the denial of his motion to suppress. After receiving a sentence of 144 months' imprisonment, Taylor has done so.

On appeal Taylor contends that the district court's finding that he consented to the search is clearly erroneous, and that even if he did consent, the court did not adequately consider whether the consent was voluntary. In arguing that he did not consent, Taylor explains that the district court impermissibly credited two mutually inconsistent statements: the officers' testimony that he refused only once to consent to a search and the testimony of Lavington and Blackwall, who both said that Taylor refused consent repeatedly. Taylor continues that after crediting (as the district court said it did) the testimony of Lavington and Blackwell that the officers repeatedly asked to search for 30 minutes, no reasonable factfinder could believe the officers' story that Taylor suddenly capitulated upon the threat of an impending search warrant.

Given that we deferentially review for clear error the district court's finding of consent, *United States v. Hicks*, 650 F.3d 1058, 1064 (7th Cir. 2011); *United States v. Jones*, 614 F.3d 423, 425 (7th Cir. 2010), Taylor is picking nits. Even if the record contains some doubt about precisely how many times the officers asked for consent and how many minutes the encounter lasted before Taylor consented, those uncertainties reflect the imprecision inherent in reconstructing the flow of a conversation. They are not fundamental inconsistencies or conflicts that invalidate the court's choice to believe the officers that, "at some point" after his initial refusal to consent and with a search warrant looming, Taylor agreed to a search. *See Anderson v. City of Bessemer City, N.C.*,

470 U.S. 564, 575 (1985); *United States v. Biggs*, 491 F.3d 616, 621 n.1 (7th Cir. 2007); *United States v. Williams*, 209 F.3d 940, 943 (7th Cir. 2000). The court's choice to believe the testimony of the officers that Taylor consented to the search was reasonable because the officers alerted him to the realistic prospect of obtaining a search warrant. That kind of credibility determination "can virtually never be clear error." *Anderson*, 470 U.S. at 575; *Biggs*, 491 F.3d at 621; *Williams*, 209 F.3d at 943. Finally, despite Taylor's insistence that reliance on Officers Straub's and Benyr's testimony was insufficient, credible officer testimony can indeed be enough to defeat a Fourth Amendment challenge. *See, e.g.*, *United States v. Dean*, 550 F.3d 626, 630–31 (7th Cir. 2008); *United States v. Wilderness*, 160 F.3d 1173, 1174–75 (7th Cir. 1998).

Taylor asserts in the alternative that, even if he had consented, the district court "procedurally erred" by not considering all the factors relevant to the voluntariness of consent, as identified in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Those factors are (a) the defendant's age, education, and intelligence; (b) whether the police advised the defendant of his constitutional rights; (c) the length of any detention before the defendant gave consent; (d) whether the police repeatedly questioned the defendant before he consented; and (e) any physical coercion. 412 U.S. at 226. Specifically, Taylor focuses on (d) and says that the court neglected to address the effect that the number of requests had on the voluntariness of his consent.

But Taylor did not argue in the district court that his consent was involuntary; rather, he maintained that he never consented at all. His district-court filings make no reference to the *Schneckloth* factors that he now says the district court failed to adequately address. A defendant cannot urge suppression on one ground in the district court and later offer a new, factually distinct ground for the first time on appeal. FED. R. CRIM. P. 12(e); *United States v. Kirkland*, 567 F.3d 316, 321 (7th Cir. 2009); *United States v. Brodie*, 507 F.3d 527, 531 (7th Cir. 2007); *United States v. Murdock*, 491 F.3d 694, 698 (7th Cir. 2007) (defendant who argued in motion to suppress that he never received *Miranda* warnings could not argue on appeal that even if he was warned he was coerced to waive his Fifth Amendment rights). If the defendant does not advance an argument in the district court, the government has no reason to offer its own evidence to rebut unvoiced allegations, the district court has no reason to address unidentified issues, and we are deprived of a full record. *See Kirkland*, 567 F.3d at 321; *Murdock*, 491 F.3d at 698–99.

Forfeiture distinguishes this case from *United States v. Groves*, 470 F.3d 311 (7th Cir. 2006), which Taylor cites as an example of this court ordering a remand because a

district court neglected to address all the *Schneckloth* factors. In *Groves*, unlike here, voluntariness was contested in the district court. 470 F.3d at 317. Reversal was therefore proper because the district court had ignored the defendant's argument that threats from the police vitiated the voluntariness of consent. *Id.* at 322. (The other opinion Taylor cites, *United States v. Jerez*, 108 F.3d 684 (7th Cir. 1997), is even less applicable. *Jerez* decided whether a seizure had occurred, not whether a consent had been given voluntarily according to the *Schneckloth* factors. 108 F.3d at 689–93; *see also Wilderness*, 160 F.3d at 1175 (rejecting defendant's reliance on *Jerez* in determining voluntariness of consent).)

Still, the government has not highlighted Taylor's forfeiture, creating the possibility that it has "waived waiver." Sometimes courts in their discretion overlook the government's failure to argue forfeiture and treat the defendant's argument as forfeited anyway, presumably because the court itself has an interest in avoiding questions that require a fuller record. *See United States v. McGehee*, 672 F.3d 860, 873 n.5 (10th Cir. 2012); *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals . . . .").

We need not overlook the government's silence about Taylor's forfeiture, however, because on the merits the district court adequately addressed the *Schneckloth* factors: the court cited *Schneckloth* and made factual findings relevant to the factors identified in that opinion. First, the court noted that Officer Benyr confirmed that Taylor could refuse consent, and he also explained the warrant application process—factor (b) above. Second, the court found that Taylor was not detained or in custody when he gave consent (he wasn't arrested until Officer Straub found the crack cocaine)—factor (c). Third, the court explicitly considered that the police repeatedly questioned Taylor before he consented—factor (d). Fourth, the court found that Benyr accurately assessed that he could get a warrant and that when seeking consent the officers applied no force or intimidation—factor (e). Taylor does not assert that the other *Schneckloth* factor—his age, education, and intelligence (a)—was relevant (indeed, *Schneckloth* acknowledges that not all factors may be significant in every case, 412 U.S. at 226). With these findings and considerations in mind, the district court had an adequate basis to conclude that Taylor's consent was valid.

**AFFIRMED**.